C. L. SADLER and Huletta Sadler,
Appellants,

v.

T. J. HUGHES LUMBER COMPANY, INC.,
and Dover Corporation/Peerless Gas
Division, Appellees.

No. 47202.

Court of Appeals of Oklahoma,
Division No. 1.

May 13, 1975.

Released for Publication by Order of the
Court of Appeals June 19, 1975.

Jarboe Keefer & Barrow, P. A., by Allen Barrow, Jr., Tulsa, for appellants.

Pierce, Couch, Hendrickson & Short, Oklahoma City, for appellees, T. J. Hughes Lumber Co., Inc.

Rinehart, Cooper & Stewart, Oklahoma City, for appellee Dover Corp./Peerless Gas Division.

BOX, Judge:

An appeal by C. L. and Huletta Sadler, plaintiffs below, from a judgment notwithstanding the verdict granted in favor of appellees and defendants below, Hughes Lumber Company, Inc. and Dover Corporation/Peerless Gas Division. For the sake of clarity we refer to the parties by their trial court designation.

In March 1971, as part of a remodeling project on their home in Cushing, Oklahoma, Mr. Sadler purchased a gas wall heater from the defendant Hughes Lumber Company. The heater had been manufactured by the defendant Dover Corporation and was designed for flush installation in combustible walls. Mr. Sadler personally installed the heater in the south wall of the south bathroom of his residence, leaving approximately one-half of an inch between the rear panel of the heater and the adjoining bedroom wall. Both the bathroom and adjoining bedroom walls were composed of sheetrock and their outer surfaces were covered by wood paneling. After installing the heater Mr. Sadler tested it and found no gas leaks or apparent defects in the heater.

On April 8, 1971, approximately one month after installation of the heater, Mr. and Mrs. Sadler returned home in the evening and discovered that their residence had sustained severe smoke and fire damage. They subsequently instituted suit against defendants, claiming that the fire was caused either by defective design or improper manufacturer of the heater, thus constituting negligence and breach of implied warranty. A jury trial on these issues resulted in a verdict in the amount of $7,650.92 in favor of plaintiffs. The trial court subsequently granted defendants motion for judgment notwithstanding the verdict and plaintiffs have appealed. For the reasons appearing below the judgment will be reversed.

I.

The decisive question presented is whether plaintiffs' evidence is sufficient to

support a reasonable inference that the alleged defect in the gas heater caused the fire. To determine this issue, it is necessary to review the evidence in some detail. We do so in light of the well established principle that in passing upon a motion for judgment notwithstanding the verdict, the test of the sufficiency of the evidence is the same as that employed in ruling on a motion for a directed verdict. McInturff v. Oklahoma Natural Gas Transmission Co., Okl., 475 P.2d 160. This test is expressed in Austin v. Wilkerson, Inc., Okl., 519 P.2d 899, as follows:

> "Where defendant moves for a directed verdict after both plaintiff and defendant have introduced their evidence and rested, the trial court must consider as true all of the evidence favorable to the plaintiff, together with all inferences that may be reasonably drawn therefrom and *disregard all conflicting evidence favorable to the defendant,* and such motion should not be sustained unless, on the basis of such consideration, it appears there is an *entire absence of proof showing plaintiff's right to recover."* (Emphasis added.)

The court in *Austin* notes further, at page 903:

> " . . . [I]n ruling upon defendant's motion for a directed verdict, the trial court was not called upon to weigh all of the evidence, including that of the defendant, and determine in whose favor it preponderates. . . . plaintiff did not have the burden of 'overcoming any and all opposing evidence . . .'; and, in determining the sufficiency of her evidence to withstand defendant's motion, the trial court should not have even considered conflicting evidence unfavorable to her."

The crux of plaintiffs' proof is composed of the testimony of two expert witnesses: William F. Goodwin, Fire Chief of the Cushing Fire Department, and Robert Fearon, an engineer. Mr. Goodwin testified that the fire originated in or around the bathroom heater on the bathroom side of the wall between the bathroom and south bedroom. According to Mr. Goodwin the fire then spread through the opening in the bathroom, down the hall and up the ceiling and into the south bedroom. He could offer no theory as to the probable cause of the fire. However, he stated that there were many possible causes of a fire of this type, such as improper installation, improper modification of the heater, or children playing with paper near a heater. He also ruled out the possibility of a gas explosion as a cause of this fire or as a likely occurrence when a gas heater has been improperly installed. Mr. Goodwin also stated that once the fire had been extinguished he made a cursory examination to determine whether there were any gas leaks in or around the bathroom heater and found none to exist.

Mr. Fearon testified that he had thoroughly examined the heater in controversy, although he had not performed any specific tests upon it, such as lighting the heater under laboratory conditions. From this examination Mr. Fearon concluded that the heater was defectively manufactured and that when it was installed in accordance with the instructions and regulations for this type of heater it "would produce a dangerous result at least some of the time."

The alleged defect was the hazardous design of baffles in the back of the heater, located behind and slightly above the burner. These baffles were designed to protect the rear wall from the flame of the burner. However, according to Mr. Fearon, the baffles did not extend low enough or near enough to the burner to prevent drafts from causing the penumbra of the flame and combustion products to come into contact with the rear panel of the heater. This latent defect would become dangerous when the heater was installed in a wall composed of combustible products, such as the plaintiffs'. The back of such a defective heater, when installed, would retain heat and after a period of use the vertical travel of combustion products towards the rear panel would cause, due to the exces-

sive heat, the zinc on the panel to boil off and the steel members to warp. This would in turn cause a fire because the temperature of the hot rear panel would be far in excess of the temperature (400° F. according to Mr. Fearon) required to ignite a sheetrock and wood wall.

Mr. Fearon testified further that his examination of the heater revealed that the baffles were warped and that the zinc had boiled off the metal on the baffles and on both sides of the rear panel of the heater. This, he said, would require temperatures in the neighborhood of 1000° F. He also stated that the "halos" visible on the rear panel indicated zones of increasing intensity of heat with the greatest intensity of heat near the center of the panel, this indicating that the combustion products emanating from the burner were in fact coming into contact with the rear panel. It was his opinion that this oxidation of the zinc was caused by the defective design of the baffles.

Although Mr. Fearon stated that he found the heater was manufactured in accordance with the American National Standards Institute standards for unvented room heaters of the type in controversy, his testimony also tends to demonstrate that the heater in fact departed from some of the ANSI standards. He testified that there was substantial warpage of the baffles caused by the excessive heat, in violation of paragraph 1.2 of the ANSI standards. Also, he found that the damage to the rear panel and baffles must have required temperature in excess of the maximum ANSI temperature for the walls of such a heater.

On direct examination, Mr. Fearon was asked the following hypothetical question:

"Q . . . (1) that the heater you have examined was installed in a wall containing combustible materials, that is wood and sheetrock, that it was mounted into the wall with approximately a one-half or less clearance to the rear wall adjacent to the back side of the heater, that

approximately one month later a fire occurred that an expert has examined and has determined that the origin of the fire was located in the vicinity, or in the wall where this gas wall heater was located, that this fire occurred approximately one month after the heater had been installed. Would you have an opinion as to the possibility of the causation of this fire?

BY MR. ABOWITZ: Objection to the form of the question, Your Honor.

BY THE COURT: Strike the word 'possibility'—

BY MR. ABOWITZ: Show my objection to the Court rephrasing the question for counsel.

BY THE COURT: That's the record, and objection will be overruled.

\*  \*  \*  \*  \*  \*

A My opinion is that the heater *malfunctioned* in the *manner that I described* earlier and *caused the fire."* (Emphasis added.)

■ Considering plaintiffs' evidence in its most favorable light, disregarding all conflicting evidence favorable to the defendant, we find that it tends to establish with reasonable probability that a defect and consequent hazardous condition attributable to the defendants existed in the heater and that the defect was the cause of the fire and resulting damage to plaintiffs. We conclude therefore that plaintiffs had established a prima facie case sufficient to submit the case to the jury.

■ In products liability cases the standard of proof of causation by circumstantial evidence, regardless of the particular legal theory upon which the action is based, is the same as that in other civil cases. As the court noted in Downs v. Longfellow Corporation, Okl., 351 P.2d 999, 1005: " . . . [T]he circumstances proved must tend to support plaintiff's theory with reasonable certainty and probability, as opposed to other causal hypotheses." See also Marathon Battery

**458**

Company v. Kilpatrick, Okl., 418 P.2d 900, 917; and Kirkland v. General Motors Corporation, Okl., 521 P.2d 1353.

Here there were several *possible* causes of the fire but plaintiffs' evidence tends to establish that the actionable cause of the fire, the defective heater, was also the probable cause.

Defendants' contention that plaintiffs' evidence was insufficient to establish that the alleged defect caused the fire apparently rests on two grounds: (1) the testimony of plaintiffs' expert witnesses was so fraught with inconsistencies and contradictions that it lacked probative force and (2) defendants' evidence established the lack of any defects in the heater.

The short answer to the second contention is that for purposes of a directed verdict or judgment notwithstanding the verdict in favor of the plaintiff, defendants' evidence is not considered. It is not within our province to decide which experts were worthy of belief and which were not or whether defendants' expert testimony so attenuated that of the plaintiffs' that it retained no probative force. This is a function properly allocated to the trier of fact alone.

■ As to the first contention we simply note that it is well settled that the probative value of conflicting evidence is solely a question for the jury. Sandlin v. Freeman, Okl., 393 P.2d 816. Moreover, in passing upon a directed verdict or judgment notwithstanding the verdict the conflicting evidence favorable to the movant is disregarded. So long as there is a reasonable inference which reasonable men could choose to accept or reject, the question should be submitted to the trier of fact.

Defendants, relying upon Downs v. Longfellow Corporation, supra, and Thompson v. Trane Company, 500 P.2d 1329, urge that Mr. Fearon's crucial testimony with respect to the issue of causation was rendered insufficient upon cross examination. In *Downs,* the court held in the syllabus:

"Where plaintiff's case rests upon the testimony of a witness whose further examination so explains or qualifies his prior testimony as to leave the fact to which he testified a matter of conjecture, possibility, or guess, it is not error for the trial court to consider such evidence as so lacking in probative force as not to warrant submitting the case to a jury."

The substance of defendants' argument is that Mr. Fearon's testimony was that the excessive heat caused by the defective heater ignited the sheetrock wall behind the heater. This would necessarily establish the origin of the fire somewhere at the rear of the heater on the north wall of the south bedroom.

However on cross examination the following colloquy occurred:

"Q  The Fire Chief said the fire started in the bathroom side which would be in the front of this heater? Would you agree with him or disagree with him?

\*      \*      \*      \*      \*      \*

A  I would if that were his testimony. I would agree that he would be correct."

■ We fail to see how the above colloquy so qualified Mr. Fearon's testimony as to render his testimony in direct examination conjectural. To begin with, the examiner misstated the facts. The Fire Chief, Mr. Goodwin, simply stated that the fire originated in the wall around the bathroom heater. This is not necessarily inconsistent with Mr. Fearon's testimony. The fire could well have originated in the rear of the heater and moved forward and through the bathroom. Even if there was some inconsistency, as we have noted, it was solely within the province of the jury to resolve it. Furthermore, in order for further explanatory testimony of a witness to deprive earlier testimony of any probative value the self-contradiction must be extreme and

manifest. 66 A.L.R. 1515. Such would be the case if Mr. Fearon's testimony on cross examination had demonstrated the falsity, impossibility or absurdity of his prior testimony. This is not the situation here however. Mr. Fearon's testimony was sufficient to support a reasonable inference that the defect in the heater caused the fire.

## II.

In addition to their motion for judgment notwithstanding the verdict, defendants filed separate motions for a new trial. A hearing on both motions was held and the trial court granted the motion for judgment notwithstanding the verdict without expressing any opinion with respect to the motion for a new trial. Defendants now urge, in the event we find the trial court erred in granting the judgment notwithstanding the verdict, that we remand for a disposition of the motion for a new trial. Plaintiffs argue, in opposition, that we dispose of the motion for a new trial without remanding in order to obviate the possibility of another appeal at a later date.

■ The issue thus presented is: when a trial court grants a motion for judgment notwithstanding a verdict and is silent as to the disposition of an alternative motion for a new trial, is the court's failure to explicitly rule thereon a denial of that motion by operation of law? Unfortunately this question has not previously been determined in Oklahoma. There appears to be a split of authority on this point in other jurisdictions; however, we believe that the better view is stated in 5 C.J.S. *Appeal & Error* § 1494, at page 821:

"If the trial court grants the motion for judgment notwithstanding the verdict and does not rule on the motion for a new trial, the failure to rule on the motion for a new trial constitutes a denial of that motion by operation of law, and on appeal from the judgment the court will review the grant of the motion for judgment notwithstanding the verdict and the denial by operation of law of the motion for a new trial."

See also Alexander v. First National Bank in Fort Collins, 455 P.2d 861; Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N.W.2d 609.

Much can be said to commend this principle. If the moving party wishes to obtain an express ruling on the alternative motion for a new trial he can secure it by asking the court to rule on both motions. If he fails to do so there is no reason to presume that the trial court meant to indefinitely withhold judgment on that motion while an appeal is made on motion granted. The better presumption is that the trial judge found merit in the motion for judgment notwithstanding the verdict and a lack of merit in the motion for a new trial. This view is supported by the judicial policy to dispose of all necessary motions on appeal and avoid needless and frequently dilatory subsequent appeals on unresolved issues. In addition, we note that the trial court's remarks at the hearing on the two motions make it clear that he granted the motion for judgment notwithstanding the verdict for the reason that he should have granted defendants' motion for directed verdict. There was nothing in the record which indicated that he was also favorably disposed to defendants' motion for a new trial.

Defendants sought a new trial for the following reasons: (1) the trial court erred in refusing to instruct the jury on the issue of unavoidable casualty, relying on C. F. Church Division of America R & S Sand Corp. v. Golden, Okl., 429 P.2d 771; (2) the trial court erred in permitting the plaintiffs' expert witness to give hypothetical opinion testimony predicated upon facts which were not in evidence; and (3) misconduct of plaintiffs' counsel within view of the jury designed to interject the issue of insurance in the case.

■ We do not reach the question whether the trial court erred in not instructing the jury on unavoidable casualty because the requested instruction does not appear in the record. Sanderson v. Caldwell, 188 Okl. 450, 110 P.2d 608. How-

ever, in Robinson v. State Stove & Mfg. Co., Inc., Okl.App., 518 P.2d 902, this court observed that an unavoidable accident instruction prescribes no duty of care or standard of conduct and that failure to give such an instruction has not heretofore been held to be reversible error.

With respect to the hypothetical question propounded to plaintiffs' expert witness, Mr. Fearon, which we quoted previously, we find no merit in defendants' contention that the question included facts not in evidence. Plaintiffs' counsel did not indulge in a lengthy recitation of the prior testimony·in asking his question, but this is not required and is doubtless of questionable value. We find that the facts alleged in the question were material facts which a jury would be warranted in finding to be established from the evidence. See C. T. Hughes Const. Co. v. Phillips, Okl., 401 P. 2d 498; Allen Co. v. Grubb, Okl., 442 P.2d 492.

The alleged misconduct of plaintiffs' counsel designed to inform the jury of the fact that insurance was involved in this case was in placing one of his files on a table allegedly in view of the jury, which contained the following caption: "Liberty Mutual-Peerless-Hughes." When defendants' counsel moved for mistrial the trial judge remarked: "I have been there and I wouldn't have known there was such a file unless you had mentioned it." We fail to see how, under these circumstances, defendants could have been prejudiced by the mere existence of the file. A new trial is not warranted by the mere conjecture that the jury's decision was affected by a possible disclosure that a party was protected by liability insurance. It remains necessary to show that under the circumstances prejudice occurred. Hutton v. Lowery, Okl., 444 P.2d 812; M & P Stores, Inc. v. Taylor, Okl., 326 P.2d 804. While remarks of counsel in closing argument made with an obvious purpose to acquaint the jury of the fact of insurance or other unwarranted references to insurance at trial are commonly viewed prejudicial upon the mere

proof of their occurrence, a clear showing of prejudice would be required in a case such as this when there is no reason to suppose the jury was ever informed of the fact. See Hutton v. Lowery, supra.

From a thorough review of the record we conclude that no prejudicial errors warranting a new trial occurred. Accordingly we reverse and remand with instructions for the trial court to set aside and hold for naught the judgment N.O.V. and that the jury verdict on behalf of plaintiffs be reinstated.

Reversed and remanded.

ROMANG, P. J., and REYNOLDS, J., concur.