**Lottie Jo KIMBRELL, an Individual, and State Farm Fire and Casualty Company, a corporation, Appellants,**

v.

**ZENITH RADIO CORPORATION, a Foreign Corporation, Appellee.**

**No. 48509.**

Supreme Court of Oklahoma.

Oct. 12, 1976.

Pierce, Couch, Hendrickson & Short by John Wiggins, Oklahoma City, for appellants.

Watts, Looney, Nichols, Johnson & Hayes by Charles J. Watts, Oklahoma City, for appellee.

DAVISON, Justice:

This case involves a manufacturer's products liability action brought by the appellant, Lottie Jo Kimbrell, and State Farm Fire and Casualty Company against the appellee, Zenith Radio Corporation, manufacturer of a television set alleged to have caused extensive fire damage to Ms. Kimbrell's home due to defects in material, workmanship and design. At the conclusion of the plaintiff's case, the trial court sustained appellee's demurrer to the evidence. Appellants have appealed from the trial court's ruling.

The primary issue raised by this appeal is whether the evidence presented in appellants' case in chief was sufficient to permit the case to be submitted to the jury.

At trial, the plaintiff's father, Mr. Galloway, testified that he purchased the television set as new in 1965, though on cross-examination defense counsel suggested that the television set may have been a 1960 or 1961 model. The fire in question occurred on February 8, 1973. Mr. Galloway further testified that he had lent the television set to his daughter, he had the set moved to her home, and that he had in the past changed tubes and fuses in the set. There is no evidence to suggest that the fuses and tubes were improperly replaced. Mr. Galloway testified that in addition to the repairs he had performed, the television set was on one occasion serviced by a television repairman, but could not testify as to the type of work performed, since the tele-

vision set was removed from his home and repairs conducted at a service shop.

During the trial, the television set, as well as photographs of it and of plaintiff's home shortly after the fire, were introduced and received into evidence. Mr. Green, an expert witness called by the plaintiff, testified that he had examined the plaintiff's home and television set shortly after the fire. The witness's examination included an inspection of the burn patterns and the wiring in the home. Based on his investigation, the witness testified that it was his expert opinion that the fire which damaged the plaintiff's home originated in the television set and was caused by a defective AC wire which was crimped inside the television set. Mr. Green further testified that in his opinion the changing of the tubes and/or fuses by the plaintiff's father could not have caused the crimp in the wire and that in his opinion the crimp occurred when the television was manufactured.

In *Kirkland v. General Motors Corporation*, Okl., 521 P.2d 1353 (1974) at pp. 1363, this Court held that in order to prevail in a manufacturer's products liability action, a plaintiff must prove three elements:

"*First* of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.

*Secondly,* Plaintiff must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. *Thompson v. Trane Co.,* Okl., 500 P.2d 1329 (1972). If the action is against the retailer or supplier of the article, then the Plaintiff must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.

*Thirdly,* Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property as

the term 'unreasonably dangerous' is above defined."

Citing § 402A comment g, of the Restatement of Torts, this Court defined unreasonably dangerous as follows:

" 'The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the original knowledge common to the community as to its characteristics.' "

The evidence at the trial was sufficient to enable the jury to find that a defect in the television set was the cause of the fire, in that the television set with its defect was dangerous to an extent beyond which an ordinary customer with common knowledge could contemplate.

The evidence did not, however, so clearly establish that the defective, crimped wire existed in the television set at the time the television left the manufacturer. Witness Green testified that the crimp might have occurred if the set was dropped or if the chassis were removed from the set. Green further testified that his examination would not prove or disprove that the chassis had been removed.

The plaintiff's father testified that he changed both fuses and tubes in the television. But, Mr. Green, in his expert opinion, did testify that the mere changing of tubes and fuses could not have crimped the wire in question.

The plaintiff's father also testified that the television had been serviced on one occasion by a television repairman. No evidence showing the type of repair work performed was offered by plaintiff. Were the repairs made by the repairman in the area in which the crimped wire was found? Could the crimp in the wire have been caused by the work performed by the television repairman?

The plaintiff left these questions unanswered, and in so doing, failed to meet the burden of proof necessary to withstand a demurrer to the evidence.

In *Kirkland v. General Motors Corporation,* supra, we stated:

"Although the manufacturers' products liability for injuries caused by defective products described in this opinion is neither grounded in negligence or breach of implied warranty, *responsibility for the defect must still be traced to the proper Defendant.* Where the product is of sophisticated design and construction, or if the product reaches the consumer in a sealed container, varying degrees of difficulty are encountered in tracing this responsibility. *The fact that the plaintiff may not be able to ascertain whether the manufacturer or some other party who handled the product before it reached the ultimate consumer is responsible is a good reason for naming all of them as parties defendant, . . ."* (Emphasis added) 521 P.2d 1353 at 1365.

The evidence at trial in the case before us, presented an obstacle in the line tracing the defect to the manufacturer, namely, the fact that the television set had been serviced by a television repairman between the time the set left the manufacturer and the fire. In failing to present evidence to explain the repairs made or demonstrate to the jury that the services performed could not have caused the crimped wire, the plaintiff failed to provide the jury with the means to overcome or circumvent the obstacle presented by intermediate repair. This being the case, the jury would have had to make an impermissible inference in order to conclude that the defect existed in the television at the time it left the manufacturer.

Plaintiff relies heavily upon two cases, both of which are easily distinguished from the case before us.

In the first case, *Bombardi v. Pochel's Appliance and TV Company,* 9 Wash.App. 797, 515 P.2d 540 (1973), the Washington Court of Appeals held that the trial court ruled correctly in permitting a TV fire case to go to the jury. In that case, the

record revealed that the Admiral television set involved was sold as a new set and serviced throughout its first ownership by Pochel's Appliance and TV Company, an authorized Admiral dealer. Although the set had been repaired seven or eight times after the time of the original sale, testimony indicated that this was not an unusually large number of service calls for a set of this age. All the service performed was performed by technicians required to attend training schools conducted by Admiral, and who had Admiral service manuals available to them. All the services conducted, were described and explained to the jury, and all replacement parts used, except for some tubes, were all Admiral parts. Additionally, testimony was received, without objection, that the television, which had been sold and serviced by Pochel's, was, when sold to plaintiff, in the same condition as when received from the manufacturer, except for the length of time it had been used.

In the case before us, no explanation is given of the services performed on the television set by the television repairman, nor was there any indication that the serviceman was an authorized manufacturer's dealer, nor was there any indication that any parts used for replacement purposes were parts made and/or distributed by the manufacturer. In comparing the evidence offered in the *Bombardi* case to the evidence at hand, we clearly see a distinction, and do not find the case persuasive.

The second case relied upon by the plaintiff is *Sadler v. T. J. Hughes Lumber Company, Inc.,* Okl.App., 537 P.2d 454 (1975). In that case, a home owner sued the manufacturer of a gas wall heater; at trial, the jury returned a verdict in plaintiff's favor, whereupon the trial court granted defendant's motion for judgment notwithstanding the verdict. The Court of Appeals, Division 1, reversed and remanded, holding that the evidence at trial was sufficient.

The evidence at trial in the *Sadler* case demonstrated that Mr. Sadler had pur-

chased the gas wall heater in question from Hughes Lumber Company, that the heater was designed for flush installation in combustible walls, that Mr. Sadler personally installed the heater, leaving approximately 1/2 inch between the rear panel of the heater and the adjoining bedroom wall. That both the adjoining bedroom wall and bathroom wall (where the heater was installed) were composed of sheetrock, with their outer surfaces covered with paneling. The evidence further showed that after installation of the heater, Mr. Sadler tested it and found no gas leaks or apparent defects in the heater.

Approximately one month after the installation of the heater, plaintiff's home received severe fire and smoke damage.

At trial, the local fire chief testified that the fire had originated in or around the bathroom heater on the bathroom side of the wall between the bathroom and the south bedroom; he further testified that he could offer no theory as to the possible cause of the fire, but did rule out the possibility of a gas explosion as a cause of the fire or as a likely occurrence when a gas heater has been improperly installed. He also testified that shortly after the fire, he made an examination of the heater and found no gas leak to exist in or around the heater.

The expert witness who appeared on behalf of plaintiff testified that his examination revealed that the heater had been defectively manufactured and that the design of the baffles in the back of the heater, located behind and slightly above the burner, did not extend low enough to the burner to prevent drafts from causing the penumbra of the flame and combustible materials to come in contact with the rear panel of the heater.

He further testified that the latent defect would become dangerous when the heater was installed in a wall composed of combustible products, such as the wall in plaintiff's home. There was sufficient physical evidence also introduced to support plaintiff's expert theory as to the cause of the fire.

The *Sadler* case is distinguishable from the case at hand, for in the *Sadler* case, the defect involved was a defect in design, which clearly would be attributable to the manufacturer, whereas in the case before us, the defect alleged is a manufacturing defect. Additionally, in the *Sadler* case, plaintiff's expert witness testified as to the cause of the defect, whereas in the present case, plaintiff's expert witness could offer no theory as to the cause of the defect, but merely made an assertive statement that the defect occurred during the manufacturing. Additionally, in the case now before us, plaintiff was unable to account for intervening repairs. Thus, we do not find the *Sadler* case to be persuasive in the case at hand.

Viewing the evidence before us, we hold that it did not trace the defect to the defendant-manufacturer, and therefore did not present a prima facie case. We therefore hold that the trial court's action sustaining the demurrer to the evidence was proper.

The judgment of the trial court is affirmed.

HODGES, V. C. J., and IRWIN, BERRY, LAVENDER, and SIMMS, JJ., concur.

WILLIAMS, C. J., and BARNES and DOOLIN, JJ., dissent.