371 So.2d 709 (1979)
SOBIK's SANDWICH SHOPS, INC., and State Farm Mutual Automobile Insurance Company, Appellants,
v.
Janice S. DAVIS and Kenneth Davis, Her Husband, and Patricia Buchanan Dunn, et al., Appellees.
No. 78-505.
District Court of Appeal of Florida, Fourth District.
June 6, 1979.
Rehearing Denied July 2, 1979.
James O. Driscoll of Driscoll, Baugh, Langston, Layton & Kane, P.A., Orlando, for appellants.
Harry Anderson of Anderson & Leklem, P.A., Orlando, for appellees Bennie Rome Jackson and Cavalier Ins. Corp.
ANSTEAD, Judge.
This is the second visit of this case to this court.[1] At issue presently is a trial court's order denying appellants' motion for contribution against another joint tortfeasor's insurance carrier.
The injured claimants were awarded judgment in the amount of $83,186.96 against three joint tortfeasors, Sobik's Sandwich Shops, Inc., Patricia Dunn and Bennie Jackson, and their insurers. Thereafter claimant's counsel directed the following letter to counsel for the tortfeasors:
As I am sure you will all recall, we took a position following the trial which we felt might tactically inure to the benefit of our clients in precluding an appeal at that time. Our position was that if an appeal were taken, and if we were successful in defending that appeal, we would collect *710 our judgment first from the party which filed the initial Notice of Appeal to the full extent of their insurance coverage. Once this amount were exhausted, we would then attempt to collect the balance from the second party to file an Appeal, to the full extent of their insurance coverage. If any amount then still remained unpaid we would drop down to the third and final party. This was, of course, prior to the Uniform Contribution Among Tortfeasors Act which now may make this position seem somewhat senseless. However, being that we took this position and made you all aware of it, we feel that we must adhere to it in order to keep our word. There are certainly no personal feelings or malice involved in this whatsoever, simply a matter of adhering to and performing in accordance with a position we took several years ago.
Therefore, we would request Sobik's Sandwich Shops, Inc. and State Farm Mutual Automobile Insurance Company to forward to us their draft in the sum of $50,000. All checks should be made payable jointly to Janice Davis, Kenneth Davis and John C. Briggs.
At the same time, we would like to have Patricia Dunn and Allstate Insurance Company forward their check payable to Janice Davis, Kenneth Davis and John C. Briggs in the sum of $32,893.75.
We certainly have no objection to an alternative method of payment that is mutually agreeable to all defendants. However, outside of any such mutual agreement we would appreciate your compliance with these procedures. I am sure that if either State Farm or Allstate feel they should have this disparity resolved, a motion for contribution in front of Judge Kirkland would adequately take care of this.
I want to again emphasize the fact that there are certainly no personal reasons for asking that this judgment be paid in accordance with the terms of this letter. We are simply attempting to live up to our word and abide by the position that we took and announced to you several years ago, irrespective of the wisdom or merits of it. I hope I will be receiving your checks, along with whatever Satisfaction of Judgments you would like to have executed, in the mail next week.
Thereafter each tortfeasor's carrier actually paid the following sums to claimants:

 Jackson $ 1,000.00
 Dunn 31,984.97
 Sobik 50,201.99

Claimants then executed a release in favor of Jackson and his carrier. Subsequently, Sobik's carrier filed a claim for contribution against Jackson's carrier under the Uniform Contribution Among Joint Tortfeasors Act, Section 768.31 et seq., Florida Statutes (1977), contending that the release given Jackson was not given in good faith pursuant to Section 768.31(5)[2] and that Jackson's carrier was responsible for a pro rata share of the common liability instead of the $1,000.00 paid by Jackson to the claimants. Upon hearing, claimant's attorney testified that the judgment was enforced in accordance with the terms of his letter, supra, except that $1,000.00 had been excepted from Jackson's carrier at the carrier's request. The trial court subsequently denied the motion for contribution.
By the passage of the contribution law the legislature intended, at least in part, to more fairly divide the responsibility among joint tortfeasors. Under the current language of the act and subject to certain exceptions, it appears that the legislature intended that among themselves tortfeasors be responsible for damages in direct proportion to their percentage of fault in causing the accident. Notwithstanding this underlying *711 principle, settlements are also encouraged that might ultimately result in one tortfeasor paying less than his share if the settlement is made in "good faith." Hence, the legislature has provided a means for the sharing of responsibility primarily based upon fault, while still encouraging voluntary settlements.
Under the common law the claimant could place the loss where he chose. This practice was one of the principal reasons for providing for contribution among joint tortfeasors:
[T]he common-law view [is] that the injured person is "lord of his action" and, when injured by the joint and several tort of two or more, may place the loss where and how he sees fit.
This item of private, rather than judicial, control of the distribution of loss arising from a common burden of liability has no doubt been largely responsible for the recent trend toward legislative and judicial repeal or modification of the common-law rule.[3]
Originally, the uniform contribution among tortfeasors act of 1939 provided for a reduction, by the amount of the settling tortfeasor's prorata share, of any subsequent recoveries by the claimant against the other joint tortfeasors.[4] However, this provision was believed to discourage settlements and in 1955 the uniform act was amended by the commissioners to provide that a release given in good faith completely released the tortfeasor involved from all claims, including contribution claims, and that the amount of the claim would be reduced only by the amount of the settlement. Section 768.31(5) contains similar provisions. In a 1977 comment on the amended provision of 1955 the uniform commissioners noted:
While it theoretically encourages settlements, it may be unfair to the other defendants and if the good-faith requirement is conscientiously enforced settlements may be discouraged.[5]
By settlement and the release granted incident thereto a tortfeasor is relieved of all liability, including liability to another tortfeasor having a contribution claim. Section 768.31(5), supra. The only condition is that the release be given in "good faith." If that "good faith" condition is to have any meaning at all consistent with the underlying purposes of the contribution act, we believe that it prevents a claimant from arbitrarily deciding how much each tortfeasor will pay on the basis of which tortfeasor has been more cooperative with claimant. There must be some reasonable *712 basis for the amount of the settlement with the tortfeasors beyond the claimant's express desire to have those who appeal pay and those who do not appeal be relieved of responsibility.
In conclusion, we hold only that a release obtained after judgment under the circumstances presented here is not given in good faith so as to bar the appellant's claim for contribution. Accordingly, this cause is reversed and remanded for further proceedings consistent herewith.
MOORE and BERANEK, JJ., concur.
NOTES
[1] 330 So.2d 223 (Fla. 4th DCA 1976).
[2] When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
[3] Commissioners' Prefatory Note, 12 U.L.A., 60-61.
[4] Id. at 99.
[5] Id. at page 34 of 1979 Cum.Annual Pocket Parts.

Interestingly in another comment the Uniform Commissioners note that:
Contribution. The original common law rule was that there is no contribution among joint tortfeasors, no matter what the nature of the tort. Some states, however, have judicially modified this rule, especially in the case of negligence. Many more states have passed statutes of various kinds providing for contribution, with the result that a substantial majority of the states now have contribution in some form and the Restatement (Second) of Torts § 886A, now provides for it
The NCCUSL has promulgated two uniform contribution Acts  the first in 1939, superseded by a revised act in 1955. Both of these Acts provide for pro rata contribution, which may be suitable in a state not applying the principle of comparative fault, but is inappropriate in a comparative-fault state apportioning ultimate responsibility on the basis of the proportionate fault of the parties involved. It has therefore been decided not to amend the separate Uniform Contribution Among Tortfeasors Act, 1955, but to leave that Act for possible use by states not adopting the principle of comparative fault. Instead, the present Act contains appropriate sections covering the rights existing between the parties who are jointly and severally liable in tort. The 1955 Act should be replaced by this Act in any state that adopts the comparative fault principle, and would be eventually replaced.
Florida, of course, has adopted both the principles of comparative fault and contribution. However, the contribution act has been amended to provide that pro rata shares be determined on the basis of the relative degrees of fault of tortfeasors, whereas the 1955 uniform act (and the prior Florida act) provided that relative degrees of fault not be considered in determining pro rata shares.