**Paul K. TIGERT, Appellant,**

v.

**The ADMIRAL CORPORATION and Cornish Furniture Company, d/b/a/ AMC Major Appliance Department, Appellees.**

No. 51823.

Court of Appeals of Oklahoma, Division No. 2.

July 17, 1979.

Rehearing Denied Aug. 10, 1979.

As Modified on Denial of Certiorari May 23, 1980.

Released for Publication by Order of Court of Appeals June 19, 1980.

Stephen Peterson, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellant.

James M. Robinson, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellees.

BRIGHTMIRE, Judge.

Plaintiff's action to recover losses from a fire said to have been set by an Admiral television was summarily adjudicated in favor of defendants in advance of trial. Plaintiff appeals contending this was error. We agree and reverse.

## I

In his second amended petition plaintiff alleged that in 1973 he bought a television made by the Admiral Corporation from Cornish Furniture Company and placed it in his home for viewing. On June 5, 1975 while plaintiff was out of town on vacation, the 19-inch black and white television set his house on fire and destroyed it. The action was founded on two recovery theories—one, manufacturers' product liability, and two, breach of an implied warranty that the product was of merchantable quality and fit for its intended use.

Both theories were premised on the allegation that the television "was defective in design and manufacture." After being ordered to do so by the court, plaintiff set out certain specific things in his petition that could have been causally defective about the set; namely, (1) the high voltage transformer may have improperly generated excessive heat and ignited area materials whose ignition point was insufficient; (2) the low voltage power transformer may have been designed or constructed in such a manner that it generated heat in excess of the ignition point of nearby materials; (3) the off-on switch and related components may have been designed and constructed in such a manner as to allow arcing across certain contacts; (4) the dielectric components of the television may have been designed or constructed so as to permit high voltage arcing in various parts, components, and contacts; and (5) the set could have been constructed of materials that were combustible at temperatures normally achieved during its operation.

Further allegations were that, whatever the defect might have been it (1) was introduced into the set by the manufacturer, (2) rendered the television unreasonably dangerous, and (3) was the proximate cause of plaintiff's fire loss.

Evidence discovered by means of interrogatories and depositions disclosed that no one had repaired or otherwise disturbed the television internally since its acquisition new from the retailer presumably in a factory packed carton. When the fire started, the house was unoccupied and had been for five days.

On July 1, 1975 an expert in the field of "fire and explosions, accident reconstruction, and products failure . . . as they relate to chemistry and physics" examined the residential remains and in a room on the south side of the house found a completely burned out television chassis "setting in a pile of well burned debris on the floor." He said he could tell nothing about the circuitry of the television, of course, but from the "fire pattern"—the burning around the television—he concluded "that the television set was the most probable origin of the fire because there was nothing else in that area that would use electrical energy and would act as an ignition source for the fire."

On December 9, 1977 the trial court rendered a summary judgment for defendants after finding "that there is no evidence on the issue of liability other than that which appears in Answers to Interrogatories and Depositions on file herein" and it, when taken in a light most favorable to plaintiff, "does not raise the issue of the defendants' liability beyond the threshold of speculation and conjecture" with the consequence that any eventual "verdict for the plaintiff based on such evidence would require an inference on an inference and would constitute speculation and conjecture." In an effort to further bolster his decision the judge said he was aware of plaintiff's expert testimony but this was of no consequence because even if the television did start the fire one would have to "infer that in all probability [it] was defective [since the set was destroyed in the fire] . . . If this were the law in this [s]tate," argued the court, "few would need fire insurance as this [c]ourt is convinced that an expert could always be found who would give an opinion as to 'the most probable cause' of the fire, which would usually be the nearest electrical appliance to the point he thinks is where the fire most probably started."

## II

There are two things wrong with this reasoning. First, it involves a misapplication of Rule 13 relating to summary judgments. That rule authorizes entry of a

summary only when a review of all the material on file shows "that there is no substantial controversy as to any material fact." Thus in passing on a motion for summary judgment the question is not whether a party will be able to prove his cause or defense at trial, or persuade the jury to find for him, but whether one or more unresolved issues of material fact exist which must be decided before a judgment can be rendered. Or, to put it differently, if depositions, affidavits or other documentary evidence clearly demonstrate that the parties agree on the existence of all the material facts regarding issues raised by the pleadings, then, absent conflicting inferences, the need for a fact finding proceeding vanishes and the court should render such judgment as the agreed facts warrant. *Perry v. Green*, Okl., 468 P.2d 483 (1970). But if disputed facts underlie any material issue or if reasonable persons might draw conflicting inferences from the facts then clearly the issue must be resolved at trial. *Northrip v. Montgomery Ward & Co.*, Okl., 529 P.2d 489 (1974).

The other flaw in the judge's reasoning is his conclusion that an inference the Admiral T.V. was defective could not be drawn from the existing circumstantial facts and the recorded expert opinion. Shorn of the irrelevant rhetoric concerning the need for insurance, the trial judge's remarks suggest that what he really meant was that a nondefective television set is just as apt to spontaneously burst into flames as a defective one and if it does it will usually self-destruct rendering it impossible to determine precisely whether the combustion was defect-generated or not. This is a circumstance, according to the judge, that prevents plaintiff from proving precisely "*what* 'defect' existed," and prevents defendant from finding evidence "to defend against the allegation that it [the television] was defective." And "[t]herefore," . . . concluded the judge, "defendants . . . are awarded . . . judgment against the plaintiff *on the issues raised herein*."

(emphasis added) Not only do these nonsequiturs acknowledge the existence of material issues, but they impermissibly embody a judicial forecast that plaintiff cannot possibly prove his allegations. Rule 13 does not contemplate such an unsophisticated criterion.

### III

The essentials of proof in a manufacturers' products liability case are these: (1) that "the product was the cause of the injury"; (2) that a causally related defect existed in the product at the time it left the manufacturer; and (3) that the defect rendered the product "unreasonably dangerous to him [plaintiff] or his property"—that the thing "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Kirkland v. General Motors Corporation*, Okl., 521 P.2d 1353 (1974).

In *Kirkland*, the court conceded that the "mere happening of an accident"—in this case a fire—does not raise a "presumption of defectiveness in the article [or articles] involved." At the same time, however, it sagaciously recognized that seldom would a plaintiff "be able to produce actual or absolute proof of the defect . . . since this information in the final analysis is usually within the peculiar possession of the [d]efendant," but would frequently "be forced to rely on circumstances and *proper* inferences drawn therefrom in making his proof."

It was with this same perceptiveness that a later court concluded the opinion of an expert witness—based on an examination of burn patterns and wiring a fire which damaged a parties' home originated in her television set—had probative value and was sufficient evidence upon which to rest an inference that the television caused the fire. *Kimbrell v. Zenith Radio Corporation*, Okl., 555 P.2d 590 (1976).[1]

---

1. The expert in *Kimbrell* also testified that the set contained an internally crimped and therefore defective AC wire which caused the ignition. Plaintiff's action failed, however, because the owner himself had worked on that T.V. as had another repairman and thus there was no evidence to show one or the other had not "crimped" the AC wire. As a result plaintiff

As we mentioned earlier there was not enough left of plaintiff's Admiral television in this case to determine precisely why it ignited. Such a proof problem was impressively treated by a Washington court in another lawsuit featuring a fire loss caused by an Admiral television set. "The fact that plaintiff," said the court, "is unable to point an accusing finger at a particular defective component does not preclude him from establishing that a product was defective where, as in this case, the exact nature of the alleged defect is that it is one causing the product to totally consume itself in fire." [2] *Bombardi v. Pochel's Appliance and T. V. Company*, 9 Wash.App. 797, 515 P.2d 540 (1973), modified, 10 Wash.App. 243, 518 P.2d 202 (1974).[3]

It has been judicially noticed that "Defect-free television sets do not ordinarily start fires" and if a set does ignite one "the proximate cause of the fire [can] reasonably be ascribed to a defect in that television." *Gast v. Sears, Roebuck & Co.*, 39 Ohio St.2d 29, 313 N.E.2d 831 (1974).

Similarly in *Winters v. Sears, Roebuck & Co.*, Mo.App., 554 S.W.2d 565 (1977) the court concluded that the "fact that Dr. Koopman was unable to point to the specific defect [in a television] because of the destruction of components of the set by the fire made the proof difficult but not impossible. His opinion, based upon his personal observations, supplemented by the facts supplied by the testimony of [plaintiff] and the fire chief concerning the occurrence and their observations, constitutes sufficient substantial evidence that the fire started in the area of the small end of the picture tube and was caused by a defect."

We hold that unresolved issues of material fact exist in this case which prevents summary judgment.

Reversed and remanded with instructions to vacate the summary judgment.

BACON, P. J., and NEPTUNE, J., concur.

had not shown the defect existed when it left the manufacturer.

2. See excellent opinion in *Gillham v. Admiral Corporation*, 523 F.2d 102 (6th Cir. 1975), cert. denied, 424 U.S. 913. 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976), upholding judgment against Admiral for both compensatory and punitive damages based on a television-ignited fire where evidence showed Admiral made and used unsafe high voltage transformers in its sets and continued to do so even after receiving information that the units were starting home and human destructive fires.

And in *Newton v. Admiral Corp.*, 280 F.Supp. 203 (1967) the court held a cause of action for strict liability was stated where a television caught fire and damaged a house and its furnishings.

3. Discussed with apparent approval in *Kimbrell.*