Dennis DUTSCH, Appellee,

v.

**SEA RAY BOATS, INC., a Florida corporation, Appellant.**

**No. 73771.**

Supreme Court of Oklahoma.

Nov. 24, 1992.

J. David Jorgenson, David R. Cordell, Conner & Winters, Wm. S. Hall, John R. Woodard, III, Feldman, Hall, Franden, Woodard & Farris, Tulsa, for appellant.

Larry L. Oliver & Associates, P.C., Larry L. Oliver, Clancy Smith, Mark A. Warman, Tulsa, for appellee.

SUMMERS, Justice:

Plaintiff's new motor boat exploded, injuring him and destroying the boat. Plaintiff sued in manufacturer's products liability. A jury found the manufacturer liable and awarded damages for personal injury and loss of the boat. The Court of Appeals affirmed by memorandum opinion. We granted certiorari to review some issues not previously presented to this court.

The three questions before us on certiorari are these: (1) Were the trial court's instructions to the jury sufficient to impart the applicable law of manufacturer's products liability? (2) Was the defendant allowed proper credit for a settlement made prior to trial by and between plaintiff, his wife, and the retailer of the boat? (3) Can plaintiff rely on the manufacturer's products liability theory to recover for loss of the boat itself, in a case where he establishes his own bodily injury in the occurrence? We answer each question in the affirmative and affirm the judgment entered below.

## FACTS

The twin-engine 340 Express Cruiser was manufactured by Sea Ray Boats, Inc., the defendant here. In March of 1985 plaintiff Dennis Dutsch purchased the boat from Bay West, a retail seller of Sea Ray boats, for $71,274.00 plus his trade-in boat. Bay West agreed to add several options to the boat and to prepare the boat for delivery. Bay West personnel installed a passenger seat, a macerator pump, a stereo, a two-way radio and antennae, and also replaced a blower that was not working.

After its delivery to him on May 1, 1985, Dutsch used the boat on several occasions during the early summer months. However, on at least two occasions he returned the boat to Bay West, complaining of gas fumes in the "head." Bay West personnel testified that they searched the engine but did not find a leak. In July he again returned the boat to Bay West because of gas fumes. Bay West again did not find a leak.

On July 21, 1985, Dutsch was using the boat and smelled gas fumes. He turned off the engines and spent the night on his boat. The next morning he smelled no fumes. He turned on the blowers, waited a few minutes, started the generator and then the engines. After a short time one of the engines died. He turned the engine off, waited a few minutes and tried to restart it. He heard a popping sound and a shrill noise. Almost instantaneously, an explosion occurred and he was blown from the boat. Dutsch was pulled from the water by some nearby boaters. The boat was completely destroyed by fire. Dutsch had a prior knee injury which was aggravated by the explosion.

Dutsch and his wife, Kay, brought suit against Sea Ray and Bay West. Just prior to the trial Bay West settled the claim brought by Dutsch for $10,000.00, and by Kay for $75,000.00. Kay dismissed as to Sea Ray. The only claim that went to trial was Dennis Dutsch's manufacturer's products liability claim against Sea Ray. After a three-day trial, the jury returned a verdict in favor of Dutsch for $181,500.00 for personal injury damages and $115,000.00 for property loss.

## I. JURY INSTRUCTIONS

### A. APPLICABLE LEGAL PRINCIPLES

■ When considering the propriety of instructions on appeal, this Court is required to consider the instructions as a whole. *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121, 129 (Okla.1984). The instructions need not be "ideal" but must reflect Oklahoma law regarding the subject at issue. *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1297 (10th Cir.1989). "A judgment will not be disturbed on appeal unless it appears reasonably certain that the jury was misled by allegedly erroneous instructions." *Messler*, 687 P.2d at 129; *see also Lee v. Volkswagen of America*, 688 P.2d 1283, 1290 (Okla.1984).

> "No judgment shall be set aside ... by any appellate court of this state ... on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error · complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.1991 § 3001.1

In *Woodall v. Chandler Material Co.*, 716 P.2d 652, 654 (Okla.1986), we stated that the test upon review of an instruction is "whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error." With these principles in mind we examine Sea Ray's allegations regarding the jury instructions.

### B. INSTRUCTION # 12

The first instruction complained of was this:

> The law does not require the plaintiff to prove the specific defect in the product, if any.
>
> The fact that plaintiff is unable to point to a particular defect does not preclude him from establishing that a product was defective where the alleged defect direct-

ly caused the product to be destroyed by fire.

In its brief-in-chief Sea Ray asserted that the instruction was legally incorrect because it did not require Dutsch to prove a specific defect. However, in its reply brief Sea Ray abandoned this argument, stating that "Sea Ray has not claimed and does not contend that a plaintiff in a products case must prove a 'specific' defect in the product in order to meet his burden of proof." Reply Brief, at 11. We thus do not address this question.

What Sea Ray does urge is that Instruction #12 misled the jury because it was tantamount to a *res ipsa loquitur* instruction. Sea Ray claims that the instruction eliminated plaintiff's burden to show a defect, and in effect required the manufacturer to show the absence of a defect. Dutsch disagrees and claims that the instruction merely informed the jury that plaintiff was not required to prove the *exact* defect, but only that the product was defective. Dutsch further urges that the instructions, taken as a whole, adequately and correctly informed the jury of the applicable law.

Instruction #12 is not an instruction found in Oklahoma Uniform Jury Instructions. However, the trial court also gave the OUJI instruction for products liability. As given by the trial court, the instruction fitted to the case from the OUJI manual reads:

A party claiming damages under manufacturer's liability has the burden of proving each of the following propositions:

1. That Sea Ray manufactured the product complained of, that is: a 1985 Sea Ray 34–foot Express Cruiser;

2. That Sea Ray was in the business of manufacturing such products as a part of its business;

3. The product was defective, and because of the defect the product was unreasonably dangerous to a person who uses, consumes, or might be reasonably expected to be affected by the product;

4. That the subject boat was defective at the time it was manufactured by Sea Ray or when it was manufactured by Sea Ray or when it left Sea Ray's control.

5. That the plaintiff, Dennis Dutsch, was a person who used, consumed, or could have reasonably been affected by the subject boat;

6. That the plaintiff sustained injuries directly caused by a defect, if any, in the subject boat.

The OUJI instruction properly instructed the jury as to the elements which must be proven by the plaintiff in a manufacturer's products liability action: (1) the product was the cause of the injury, (2) the product was defective when it left the hands of the manufacturer and (3) the defect made the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer. *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 773 (Okla.1988); *Stuckey v. Young Exploration Co.*, 586 P.2d 726, 703 (Okla.1978). The plaintiff carries the burden of proof on each of these elements. *Id.*

The doctrine of *res ipsa loquitur* is a rule which, if applicable, allows an inference of negligence of the defendant from the mere fact that an accident happened. *Sisson v. Elkins*, 801 P.2d 722, 724 (Okla.1990). The effect and result of the doctrine's application is to aid a plaintiff in making a prima facie case under circumstances where direct proof of negligence is beyond the power of the plaintiff but within the power of the defendant. *Id.*

In Oklahoma the doctrine has never been applied to a case based on manufacturer's products liability. We need not be concerned with whether the application of *res ipsa loquitur* should apply here because the given instructions did not amount to an application of the doctrine. The instructions, as a whole, did not allow the inference of a defective product simply because an accident occurred. Rather, the instructions required that the plaintiff prove that the product was defective when it left the hands of the manufacturer. The defendant has conceded that the plaintiff need not prove "the specific defect" under the circumstances. When considered with

all the other instructions we do not believe with "reasonable certainty" that the jury was misled by the Instruction # 12. *See Messler*, 687 P.2d at 129.

■ Sea Ray also asserts that this instruction allowed the jury to find in favor of Dutsch without making Dutsch show that a defect was more than just a possibility. Sea Ray urges that Dutsch's burden of proof included the burden to negate all other possibilities. We must disagree. In *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1364 (Okla.1974), we stated that circumstantial evidence may be used to support the probability of a defect, and that "it is not necessary that such proof rise to such degree of certainty as to support only one reasonable conclusion and exclude all others." *Id. quoting Chickasha Cotton Oil Co. v. Hancock*, 306 P.2d 330 (Okla.1957).

■ A manufacturer's products liability plaintiff need not exclude all other possible conclusions. However, the mere possibility that a defect caused the injury is not sufficient. The trial court properly instructed the jury in this area with Instruction # 8 which stated that the jury's "decision must be based upon probabilities, not possibilities." [1]

## C. PROPOSED INSTRUCTION # 13

Sea Ray also asserts reversible error with regard to the trial court's refusal to give proposed Instruction # 13. Sea Ray requested this instruction to inform the jury with regard to the defense of material modification and alteration of the product. The trial court refused the instruction, stating that the defense was adequately covered by the other instructions. Sea Ray urges that the other instructions were insufficient to inform that jury that a material modification or alteration of the boat might indicate that the defect did not exist at the time the product left the hands of the manufacturer.

At trial, evidence was presented that the boat had been modified in that several accessories had been added, such as a two-way radio, antennae, seats and stereo. Bay West had also installed a macerator pump and a blower. Apparently these modifications were inconsequential with regard to the fuel system, the probable cause of the explosion. There was also evidence that Bay West had searched for the fuel leak in the area under the head, where the engines were located. Bay West mechanics testified that they were approved by Sea Ray and that they did not alter the fuel system. Sea Ray surmised that these searches by Bay West could have critically altered, albeit inadvertently, the fuel system in some way.

■ In light of this conflicting evidence, a fair argument can be made that the better practice would have been to allow Instruction # 13. Material modification or alteration of the product is a defense to a manufacturer's product liability action. *See Kimbrell v. Zenith Radio Corp.*, 555 P.2d 590 (Okla.1976). The manufacturer is not held responsible if the modifications or alterations are responsible for the defect and is the intervening and superseding cause of the injuries. *Messler*, 687 P.2d at 125. Considering the instructions as a whole, however, we agree with the trial court that this defense was adequately covered by the other instructions.

The OUJI-based instruction, as quoted above, required that the jury find that the defect existed when it left the hands of the manufacturer. Only if the plaintiff proves this element is recovery for damages possible, according to the instruction. If the jury does not find this element to exist the plaintiff may not recover. Further, Instruction # 9 explained that a compensable defect arising from the design, manufacture or labeling must "occur while the product was in the control of the defendant." Instruction # 10 stated that the manufacturer is not required to make a

---

**1.** In its original brief on appeal Sea Ray argued an absence of evidence to prove *any* defect—a charge that the verdict was supported by no competent evidence. On certiorari this argument is abandoned and thus not addressed in our opinion. See *Ford v. Ford*, 766 P.2d 950, 952 (Okla.1988).

perfect product, but only "manufacture and place into the stream of commerce a safe product." At least these three other instructions pointed out to the jury that the defect must exist at the time the product left the control of the manufacturer. Thus, we do not find that the instructions as a whole "probably resulted in a miscarriage of justice." 20 O.S.1991 § 3001.1.

## II. DAMAGES

### A. CREDIT FOR SETTLEMENT WITH BAY WEST

Sea Ray claims error in the trial court's refusal to give credit for both the $10,000.00 settlement made by Bay West with Dutsch and the $75,000.00 settlement it made with Dutsch's wife, Kay. Sea Ray urges that by only giving credit for the $10,000.00 settlement, the trial court has evaded both the letter and the spirit of 12 O.S.1991 § 832. Specifically, Sea Ray suggests that the Bay West settlement with Dutsch was not in good faith and was merely an attempt to gain a greater recovery from Sea Ray. The basis of this argument is the fact that the wife's consortium claim was settled for an amount much greater than the settlement for Dutsch's injuries.

In relevant part 12 O.S.1991 § 832 provides:

H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater....

Relying on the "good faith" language in sub-paragraph H and the purpose of the Act—"to encourage rather than discourage settlements"—Sea Ray seeks credit for $85,000.00 against the jury's verdict. *See*

*Nat'l Union v. A.A.R. Western Skyways,* 784 P.2d 52 (Okla.1989).

Dutsch, on the other hand, states that Section 832 does not provide that settlement with some third party must also be credited. Dutsch points out that his wife was not a party to the trial of this action. The only two parties which were before the court were Dutsch and Sea Ray.

We have never addressed the issue of whether a party may obtain credit for a spousal or other third-party settlement, and if so, under what circumstances. A spouse's settlement of his or her derivative claim for loss of consortium is the sort of situation that might well be of concern to the courts, and be the basis for a hearing to determine the good faith, or lack thereof, in a settlement disposing of claims both for the injury and the loss of consortium. One court has stated that the Uniform Contribution Among Tortfeasors Act is meant to prevent a claimant from arbitrarily deciding how much each tortfeasor will pay on the basis of whether the tortfeasor has cooperated with the claimant. *See Sobik's Sandwich Shops v. Davis,* 371 So.2d 709, 711 (Fla.App.1979). Another court has addressed the requirement of good faith in settlement. *Tech-Bilt v. Woodward-Clyde & Assoc.,* 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). The California Supreme Court held therein that the "good faith" requirement was a provision which allowed the court to review a settlement to determine whether it prejudiced the interests of the non-settling defendant. *See also Parker v. Vanell,* 167 Ariz. 55, 804 P.2d 784 (Ct.App.1991).

But here we do not believe that the circumstances warrant reversal of the trial court. Sea Ray did not request a hearing on the "bad faith" allegation, nor present any evidence of bad faith on the part of Dutsch or his wife at the hearing to settle the journal entry. Sea Ray simply relies on the amount of settlement with Kay to show bad faith. The trial court specifically found that the settlement with Kay was not disproportionate to the jury verdict awarded to Dutsch by the jury. Sea Ray's

assertion in and of itself is insufficient to a show a bad faith settlement.

Sea Ray also asserts that the Act contemplated situations such as this one and provides that credit shall be given for "any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater...." Sea Ray urges that although the stipulated amount paid to Dutsch was $10,000.00, the actual consideration paid for the release is $85,000.00. Again, "consideration" in that sense does not necessarily mean the total delivered to all claimants executing releases. There is no evidence in the present record that Dutsch's release in exchange for stated consideration of $10,000.00 was in bad faith. The only established fact is that the amount paid to Kay was to settle her claim for loss of consortium. As far as this record is concerned, that is her money and he has no claim to share in it. She executed a release of her claim against Bay West in exchange for the stated amount. Then she dismissed as to Sea Ray. Sea Ray presented no evidence to support its bald assertion of bad faith and collusion in the Bay West settlement.

The trial court gave statutory credit to Sea Ray for the $10,000.00 paid by Bay West to Dennis Dutsch. In light of the lack of other evidence, we do not find that the trial court committed error in doing so.

## B. DAMAGES AWARDED FOR THE BOAT ITSELF

■ Finally, Sea Ray asserts that the trial court erred in allowing recovery by Dutsch for the boat itself. Relying on *Waggoner v. Town & Country Mobile Homes*, 808 P.2d 649 (Okla.1990), Sea Ray claims that a plaintiff may not recover for the product itself under a theory of manufacturer's products liability. The jury awarded damages for the boat in the amount of $115,000.00.

In *Waggoner*, the plaintiff brought a manufacturer's products liability action to recover damage to the product in question, a mobile home. There were no other asserted damages to property or persons. We ruled that no action lies in manufacturer's products liability for purely economic injury to the product itself. In so holding we observed that the purpose of adopting the theory of manufacturer's product liability in tort cases was not to do away with contractual liability under the Uniform Commercial Code. When purely economic damages occur and there is no damage to person or other property, U.C.C. remedies are sufficient to protect the plaintiff.

*Waggoner* was a narrow ruling dealing with the situation where there was damage only to the product itself:

> We adopt this rationale and hold that in Oklahoma no action lies in manufacturer's products liability for injury only to the product itself resulting in purely economic loss. *Id.* at 653.

*Waggoner* did not address the situation presented here, where there is personal injury as well as damage to the product. In this situation prior case law indicates that both types of damages are recoverable under a products liability theory. *See, e.g., Lee v. Volkswagen of America*, 688 P.2d 1283 (Okla.1984); *Smith v. United States Gypsum Co.*, 612 P.2d 251 (Okla.1980); *Dewberry v. LaFollette*, 598 P.2d 241 (Okla.1979); *Kimbrell v. Zenith Radio Corp.*, 555 P.2d 590 (Okla.1976).

In fact, *Waggoner* specifically stated that manufacturer's products liability provides for the recovery of personal injury damages and damages to other property. *Id.* at 652. Recognizing that manufacturer's products liability and the U.C.C. provide "parallel remedies" in these instances, we simply pointed out that there was no need for the products liability theory to extend to the situation where the only damage was to the product itself.

■ *Waggoner* does not require that plaintiff recover under two different theories if there is damage to the product in addition to other damages. The purpose of *Waggoner*—to preserve the remedies of the U.C.C.—is upheld by limiting a plaintiff seeking only recovery for the product itself to U.C.C. remedies. This policy would not be furthered by requiring a plaintiff to proceed under two different theories to re-

cover two different types of damage if one type of damage claimed is recoverable in manufacturer's products liability. Thus, we decline to extend *Waggoner* beyond those situations in which a plaintiff suffers damage only to the product itself. The trial court was correct in permitting recovery for the loss of the boat.[2]

## CONCLUSION

In summary, we hold that the instructions when considered as a whole do not require reversal, because we do not find that there is a reasonable certainty that the jury was misled. We affirm the trial court's decision to credit $10,000.00 against the jury's verdict for the settlement between Dennis Dutsch and Bay West. We further conclude that damage for the loss of the boat was recoverable under a manufacturer's products liability theory, because Dutsch also sought and recovered damages for his personal injuries. The Court of Appeals' opinion is vacated, although it came to the same conclusion as do we. The trial court's judgment is affirmed.

OPALA, C.J., HODGES, V.C.J., and KAUGER and WATT, JJ., concur.

ALMA WILSON, J., concurs specially.

LAVENDER, SIMMS and HARGRAVE, JJ., concur in part, dissent in part.

ALMA WILSON, Justice, with whom OPALA, Chief Justice and KAUGER, Justice, join, concurring specially.

I concur in the majority opinion and write specially to express my view that the availability of manufacturers' products liability cannot depend on the kind of damages plaintiff seeks. The majority opinion refuses to extend *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla.1990) to the facts in this case. The factual difference between *Waggoner* and the instant case is that the plaintiff herein

suffered personal injury as well as injury to the defectively manufactured product. That is, in *Waggoner* the plaintiffs suffered injury to the property due to deterioration and diminution in value of their defectively manufactured mobil home; while, in this case, the plaintiff suffered injury to property and person when the boat exploded and the plaintiff was blown from the boat. The danger posed by a defect in the product at the time it was shipped by the manufacturer is the essential element to prove manufacturers' products liability. Once again, I am compelled to reiterate that the remedy of manufacturers' products liability was fashioned to protect the consuming public from dangerous products.[1] The right to pursue the remedy of manufacturers' products liability must be determined by focus on the danger posed by the product rather than the kind of damages claimed. Accordingly, I would send the message contemplated in *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okla.1974). Rather than confine application of *Waggoner*, I would overrule *Waggoner*.

---

2. Sea Ray also asserted on appeal that the amounts awarded for the loss of the boat and personal injury were excessive. These allegations were not included in the petition for certiorari and will not be considered by this Court. *Ford v. Ford,* 766 P.2d 950, 952 (Okla.1988).

1. See, *Waggoner v. Town & Country Mobile Homes, Inc.,* 808 P.2d 649 (Okla.1990), dissent by Alma Wilson, J., at page 654; and *Oklahoma Gas & Electric Company v. McGraw–Edison Company,* 834 P.2d 980 (Okla.1992), dissent by Alma Wilson, J., at page 982.