RAYMOND HANSEN, APPELLEE, V. THE VILLAGE OF RALSTON, A MUNICIPAL CORPORATION, APPELLANT.

22 N. W. 2d 719

FILED MAY 17, 1946. No. 32038.

*Webb, Beber & Kelly* and *L. B. McDonald,* for appellant.
*Gross, Crawford & Welch,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

PAINE, J.

This action for damages for trover and conversion of personal property was brought against the Village of Ralston, a municipal corporation. A verdict for the plaintiff was returned by the jury in the amount of $13,138.26, from which defendant appealed.

It was first tried in the district court in March 1944, at which time the trial judge instructed the jury that there was a conversion of the property, leaving as the only ques-

tion for the jury the duty of finding the value of the property, which they returned in the sum of $5,166.66. From this verdict the Village of Ralston appealed to this court, and on April 6, 1945, an opinion was entered, reversing the judgment of the lower court for directing a verdict for plaintiff on the issue of conversion, and remanding it for a new trial.

In that opinion (Hansen v. Village of Ralston, 145 Neb. 838, 18 N. W. 2d 213) will be found a full statement of the facts as shown by the evidence at the first trial, and in this opinion only such additional facts will be presented as are required for a decision.

The second trial was begun before the same district judge on June 6, 1945, in which trial the jury returned a verdict for the plaintiff for the full amount prayed for in plaintiff's petition. A motion for a new trial was filed, setting out 36 grounds of error, which motion was overruled by the court, and the Village of Ralston appealed to this court, and set up six assignments of error.

The first assignment of error is in regard to the conduct of the trial by the trial court, particularly in remarks from the bench in the presence of the jury, which it is contended constituted irregularity and prevented the defendant from having a fair trial. It appears that on June 6, 1945, while the jurors were being examined as a whole, and before the jury had been sworn to try this case, the trial court made this remark to the jurors: "The question in this case is the value of the property alleged to have been converted; there is no other question than that."

It seems that when this remark, claimed by the defendant to be highly prejudicial, was made by the judge, the court reporter was out of the room. After the trial was over, and while the court was considering the motion for a new trial, two affidavits were filed, one by H. W. Helm, mayor of the defendant Village of Ralston, and the other by L. B. McDonald, one of its attorneys, which set out this statement of the court. The attorney for the plaintiff, Mr. Crawford, stated: "That if said statements were made by

the trial judge, no objection was made, or no request for a continuance made by the defendant, and, therefore, the defendant is in the position, if said statement was made, of gambling on the verdict of the jury, and then for the first time after an adverse verdict raising the question, * * *."

During this argument on the motion for a new trial, the court said: "You are moving to strike those? MR. CRAW-FORD: They were just filed down in the Clerk's office. THE COURT: Sustain the motion to strike them."

In regard to the affidavits of the mayor and counsel setting forth this statement by the court, they would be governed by exactly the same rule which has been announced by this court many times in regard to the alleged misconduct of counsel in arguments to juries, which cannot be shown by affidavit, and to preserve such error the statements must be taken by the official court reporter at the time they are made, together with the objections made thereto and the court's ruling thereon. See In re Estate of House, 145 Neb. 670, 17 N. W. 2d 883. It is too late to take advantage of such a statement by the trial court to the jury when first excepted to at the time of the argument on the motion for new trial.

The second assignment of error is the refusal of the trial court "to admit evidence offered to show that the Ralston Amusement Company was a de facto corporation, which evidence was offered in support of one of defendant's theories of defense, to-wit, that the property alleged to have been converted by the defendant, Village of Ralston, was lawfully in possession of Ralston Amusement Company, at the time of the alleged conversion."

It was stipulated between the parties that the articles of incorporation of the Ralston Amusement Company were recorded in Corporation Record No. 19, beginning at page 18, of the records of the county clerk of Douglas County, and that any part of them that counsel for the village wished to offer might be offered by simply reading from this Corporation Record No. 19, and the attorney for the defendant read the important provisions of the articles of

incorporation into the record. Article III shows that the general nature of the business to be transacted by this corporation was that of carrying on a general amusement business at Ralston, Nebraska, including golfing, swimming, dancing, restaurant, etc., and that it had the right to buy, sell, or encumber both real and personal property. The articles of incorporation provided that the commencement of the corporation should be on December 20, 1938, and continue for 25 years. The articles of incorporation are signed by Melvin Bekins, Henry J. Beal, and F. J. Despecher. Article VII provided that the board of directors should consist of three members, one to be the chairman of the village board, such board to have the right to name the second member of the board after Melvin Bekins should go off the board, and Henry J. Beal as the third member of the board.

Exhibit No. 18 was received without objection, and is the original copy of the contract entered into on December 20, 1938, between the Village of Ralston and the Ralston Amusement Company, in which the village leased to the Ralston Amusement Company all concessions connected with the Lakewood Country Club for a period of five years, with additional options.

Exhibit No. 12 is the original copy of a purchase order for 150 oak chairs, a bar, Fairbanks scale, and miscellaneous kitchen utensils, this order being given August 3, 1939, and signed by the Ralston Amusement Company, Inc., by F. J. Despecher, president, and Henry J. Beal, secretary. The amount of the order is $1,252.68, with a down payment of $445.32, 23 monthly installments thereafter of $38.52, and a final installment of $38.47. This is referred to as the Buller contract, as it is signed by P. B. Buller as seller.

Among the exhibits we find 33 monthly reports of the fees collected on the Ralston Park Golf Course, and each report shows that 25 percent thereof was paid to the Ralston Amusement Company by the manager who happened to be running the place at the time.

Exhibit No. 13 is a letter, dated September 8, 1941, to

H. W. Helm, president of the Ralston Amusement Company, from the Universal Finance Corporation, of Omaha, in which the finance company returned check for $38.52, saying that the Buller contract was paid in full by the last check of $38.67 on August 13, 1941. In reference to this exhibit, Mr. Helm testified that when he became mayor, or chairman of the board of trustees of the village, he also became president of the Ralston Amusement Company, and the letter was addressed to him as president of that company, and he mailed in a check of the Ralston Amusement Company in response to a statement.

Exhibit No. 21 is a certificate that it is a complete, true, and correct copy of resolutions of the board of directors of the Ralston Amusement Company, designating the Live Stock National Bank as depositary of its funds, and providing the officers who shall have the right to sign checks, notes, and drafts, said exhibit No. 21 being signed by the president, H. W. Helm, and by Henry J. Beal as secretary-treasurer, and stating at the bottom that the secretary had signed his name and affixed the seal of the corporation on the 27th day of June, 1940. This is signed by Henry J. Beal, secretary, and on the place for the imprint of the seal there was written the word "None," showing that the corporation did not have a seal at the time these resolutions were adopted in accordance with the requirements of the Live Stock National Bank. This exhibit No. 21 was offered in evidence and was rejected by the court on the objection that it was immaterial and needlessly encumbered the record.

Exhibit No. 22 was a lease, made June 15, 1940, between the Ralston Amusement Company and Robert Linder, which exhibit was offered, and rejected by the court on the same ground.

Exhibit No. 23 was a release, by which Robert Linder released and discharged the Ralston Amusement Company and Henry J. Beal from all liability by reason of the lease which Linder had held. It was signed by Robert Linder, Henry J. Beal, and the Ralston Amusement Company by

its president, H. W. Helm.

These exhibits were found in the files of the village at the city hall by Mr. Helm, and were offered by the defendant to show a corporate exercise and user of corporate powers by the Ralston Amusement Company.

Mr. Helm testified that during the summer of 1940, Mr. Beal called him and "raised a complaint," and he answered Mr. Beal: " 'Yes, sir, why don't we get together and straighten this thing out.' " He further testified: "We had always been willing, we would release certain property to him from time to time which we knew beyond a shadow of a doubt was his property to dispose of as he saw fit." He stated that the village knew that Judge Beal owned some of the property, and that "a lot of it we didn't know who owned, * * * we knew that Mr. Berger owed in the neighborhood of $13,000, when he went broke, * * *."

The defendant village offered to prove by Mr. Helm that, as mayor of the Village of Ralston, Mr. Helm tenders and offers to Mr. Beal, or to Mr. Hansen, the plaintiff, any property that belongs to either of them, but objection to the offer of proof was sustained.

H. W. Helm, chairman of the village board, and during that time president of the Ralston Amusement Company, testified that metal tags were placed on such equipment as had been purchased under the Buller contract, which is exhibit No. 12, heretofore set out. He bought the tags, which were brass plates carrying the words, "Property of the Village of Ralston." They were bought by the Ralston Amusement company for $15.25, ordered by Mr. Helm as president of the Amusement Company, and exhibit No. 16 is the check given by Mr. Helm on the account of the Ralston Amusement Company in the Live Stock National Bank in payment of these tags.

Mr. Helm testified that transactions were handled by him between April and September, 1941, with various business concerns in Omaha by the Ralston Amusement Company, and that he drew checks on its account to pay for these purchases, the hardware bills, labor bills, boiler inspection,

etc. This Ralston Amusement Company entered into leases, contracts of purchase of equipment, bonds, opened a bank account with the required resolutions adopted by its board and duly certified by Henry J. Beal, secretary, to the Live Stock National Bank for the bank record; it drew checks required in the transaction of its business under its contract to purchase equipment for this amusement park.

The objections made by plaintiff to many exhibits showing the transaction of business by the Ralston Amusement Company were that the exhibits were immaterial and needlessly encumbered the record. The court, in sustaining objections to such exhibits, repeatedly said that the existence of the corporation as a corporation had not been established. However, its existence as a de facto corporation had been established. This court has said: "It is essential to the existence of a *de facto* corporation that there be a charter or some law under which a corporation with the powers assumed might lawfully be created; a *bona fide* attempt to organize a corporation under such law with a colorable compliance with its requirements; and an actual user of corporate power." Parks v. James J. Parks Co., 128 Neb. 600, 259 N. W. 509.

In our opinion, ample evidence is in the record to show that the Ralston Amusement Company was a de facto corporation, and the exhibits relating thereto, when properly identified and offered, should have been received in evidence by the court, and its rulings upon such offers were prejudicially erroneous.

Several of the assignments of error relate to the instructions given by the court. Upon examination it is found that instruction No. 4 was the longest instruction given by the court, and repeated many of the allegations of the petition, and said that the village employed different individuals to conduct the operations, and at one time operated the park through its own offices, and entered into an agreement with Mr. Beal that if he would leave the property in the park the village would be responsible for the same, and further agreed to pay a balance of $500 or $600

to a creditor of Mr. Berger for some of his property.

Instruction No. 4 further says that the evidence shows that sometime early in 1943, the plaintiff purchased this property, and that, when he demanded that the village turn it over, the defendant, through its officers, refused to deliver the same, and thereby converted the property to its own use, and plaintiff prays judgment for the value thereof. This instruction is more favorable to the plaintiff than the evidence would warrant. It recites some of the claims of the plaintiff in his petition as though they were proved by the evidence, when the evidence is highly in dispute. The giving of instruction No. 4 was prejudicial to the defendant.

In instruction No. 5 the court instructed the jury about the refusal to surrender and deliver goods, and stated that, if the refusal is caused by a reasonable apprehension that the one to whom he is delivering the same is not entitled to the goods, then the possessor of the goods has the right to retain the same. If this statement had been followed by the words that, in case the jury found there was such a reasonable ground for the defendant to refuse the surrender of the goods, then the jury should find a verdict in favor of the defendant, it would have been proper, but neither this instruction nor any other instruction set forth any possible situation under which the jury might find a verdict for the defendant. However, this fifth instruction concluded prejudicially to the defendant by saying that the jury was instructed that "the evidence clearly shows that the Plaintiff, Hanson, had the same rights in the chattels that Berger had at the time the same were placed on the property of Defendant," and that if the jury found "that the Defendant converted the chattels of the Plaintiff, then your verdict will be in favor of the plaintiff."

It appears that the membership of the Ralston village board had entirely changed, and there is competent evidence showing that the present members were in honest doubt as to who was the actual owner of the personal property involved herein.

We will set out in narrative form some of the evidence of one of these members, Don Jefferson, who was elected in the spring of 1939, and was mayor or chairman of the board from December 1941, until April 1943. He said he assumed it was property placed there by the WPA, and possibly George Berger; that the village added equipment and fixtures, and the Ralston Amusement Company bought equipment to put in there, and he knew that the present Ralston Country Club had equipment, and there was a sponsors' fund put up by the members in that club. He said plaintiff came to his house one evening and said he had just bought some property down there and would like to take it out. He said he invited the plaintiff to go down to the board meeting which would take place that evening, and said they wanted to get it cleared up and find out who the property belonged to, but that the plaintiff did not show up; that the board members decided that if they did not know to whom the property belonged they would not permit any more equipment and fixtures to be taken out of the building unless ownership was proved.

Witness Helm testified that the sponsors of the club put up some of their funds in cash, and also by furnishing equipment, which was accepted.

Harry Bothmer was mayor of Ralston from May 1943, until May 1944, and had been on the board of trustees from December 1941. He said the village purchased some property while he took care of it in 1942, and testified he was at the board meeting when the letter was written by Mr. Jefferson as mayor on March 8, 1943, asking Mr. Beal to come to the board meeting and identify his property; that there was a discussion about this property, and it was the sense of the meeting that "the Judge be asked to identify, or prove ownership to the property, in which case we would be glad to give it to him."

The evidence shows that Henry Beal put up a large amount of money, buying equipment which was used and enjoyed by many people, but it is not clear that some of the equipment remaining there was not purchased by or

through several other sources. If any of the property was so purchased, and if the present members of the board could not find out, and did not know, who owned the property, then they were justified in refusing to permit the plaintiff to remove it upon demand, and the issue of conversion should have been submitted to the jury.

As was said in our first opinion in this case. "A *bona fide* reasonable detention of property by one who has assumed some duty respecting it, for the purpose of ascertaining its true ownership, or of determining the right of the defendant to receive it, will not sustain an action for conversion." Hansen v. Village of Ralston, 145 Neb. 838, 18 N. W. 2d 213.

Because of several errors herein set out, the judgment of the district court is reversed and set aside, and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.