Florence Louise **MESSLER**, Administratrix of the Estate of Robert August Messler, Deceased, Appellee,

v.

**SIMMONS GUN SPECIALTIES, INC.**, a corporation; Firearms International Corporation, a corporation; and F.I. Industries, Inc., a corporation, Appellants.

No. 57560.

Supreme Court of Oklahoma.

June 5, 1984.

Rehearing Denied Sept. 26, 1984.

Abel, Musser, Sokolosky & Clark by Ed Abel and Leo H. Whinery, Oklahoma City, for appellee.

Fenton, Fenton, Smith, Reneau & Moon by Edward L. Ray, Oklahoma City, for appellants, Firearms Intern. Corp. and F.I. Industries, Inc.

HODGES, Justice.

The questions raised on appeal arise from the award of a jury verdict in a wrongful death action based on manufacturers' products liability. The issue presented in the trial court was whether a shotgun, manufactured in Spain, and imported by Firearms International Corporation and F.I. Industries (appellants-importers) for resale, was defectively designed and manufactured in a manner which made it unreasonably dangerous beyond the contemplation of the ordinary user.[1] The cause of action arose as the result of the explosion of a 12 gauge AYS Matador double barrel shotgun. Although it is believed the gun was at least ten years old at the time it exploded, the history of the gun is obscure. None of the parties were able to determine the exact age of the gun, the date of the sale, any chain of ownership, or the extent to which the gun had been used. However, the gun had been modified after purchase with the attachment of a floating rib soldered to the top, presumably to facilitate sighting.

While Richard Simpson and a group of friends were shooting skeet, the right barrel of the gun exploded and a fragment of the exploding metal struck Robert August Messler, the owner of the gun, who was standing some distance in back and to the right of the shooter. Messler died en route to the hospital from injuries sustained from the metal projectile. Approximately one year after the accident, the widow of the decedent (appellee) filed a claim for damages against the importers of the gun and against Simmons Gun Specialties, Inc. (Simmons) who had modified the gun by attaching the floating rib,[2] for the wrongful death of her husband. She alleged that the shotgun was defectively designed and manufactured in such a manner as to make it unreasonably dangerous because: the metal used in the gun was insufficient to withstand the pressure of firing; the defendants used improper bonding in the brazed area above the pin slide; and that the floating rib attached to the gun weakened the gun which caused it to explode.

The importers denied that the gun was defectively manufactured and raised two affirmative defenses: 1) the shotgun was not in the same condition as it was when it was originally sold, but had been so changed and altered that the modification was responsible for any alleged defect; and 2) the sole and proximate cause of the explosion of the gun was the negligence of the decedent and other third parties, and the abnormal use and misuse of the gun by decedent and unknown third parties. Sim-

---

1. See *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974).

2. Neither the manufacturer nor the seller of the gun was a party in the lawsuit.

mons denied that it had used improper materials or design in attaching the floating rib to the shotgun or that its modification of the shotgun in any way weakened or impaired the gun, causing it to explode. It pleaded that the explosion was the result of negligence and want of care of decedent or third parties, or use of improper design or materials by the original manufacturer.

After extensive discovery, Simmons moved for summary judgment based on an affidavit by Simmons and a deposition by the widow's metallurgical expert witness. The affidavit by Simmons described the procedure used to attach the floating rib to the gun. The metallurgical expert witness, in his deposition, accepting this affidavit as true, testified that the procedure described could not be the cause of the explosion. The expert explained that the floating rib was attached by a soldering process at a relatively low temperature, and that a much higher temperature would be required during modification to weaken or impair the gun. All the parties were present at the hearing on the motion for summary judgment, and neither the widow nor the importers presented any evidence in opposition to the motion. Because there was no substantial controversy as to the fact that the modification of the shotgun did not constitute a proximate, or a contributing cause of the rupture of the shotgun, summary judgment was granted. The journal entry was approved by all parties, and no appeal was taken from that order.

At trial, the basic contention between the parties was whether the gun was defectively designed and manufactured in such manner that it exploded under normal use; or whether the explosion of the gun was due to misuse of the gun, i.e., improper use of overloaded shells, which brought too much stress and pressure on the barrel of the gun, and caused it to explode.

On the morning of trial, the widow filed a motion in limine to prohibit the importers from arguing, contending, mentioning or in any way referring to the modification of the gun by Simmons as being the proximate cause of the gun's explosion. This motion was sustained. At trial, the importers again sought to introduce evidence of the subsequent modification of the shotgun by attachment of the floating rib. The court sustained widow's objection and refused to admit the evidence. The jury returned a verdict for the widow in the amount of $275,000.00. The trial court entered judgment which included pre-judgment interest for a total of $430,822.04, plus accrued interest on the principal sum from and after the date of judgment.

The importers assert on appeal that: 1) the trial court erred in allowing widow's metallurgist expert to testify that defective brazing contributed to this failure, and then refusing to allow importer to introduce evidence of the modification by Simmons, which importer contends contributed to the breakdown of the braze, or the use of the expert's deposition, relating to the subsequent modification of the shotgun for impeachment purposes; 2) the rulings and comments of the trial court before the jury constitute prejudicial error; 3) the trial court committed reversible error in giving Instruction No. 8; 4) the trial court erroneously overruled appellants' demurrer to the evidence and motion for directed verdict; and 5) post-judgment interest cannot be imposed upon pre-judgment interest.

I.

A.

■ Liability for injuries sustained by a user of an altered product may be imposed on a manufacturer or seller if the injuries were caused by a defect in the product as manufactured and sold. The seller or manufacturer may not be held liable if an alteration is responsible for the defect, and is the intervening and superseding cause as opposed to the concurrent cause of the injuries.[3]

---

**3.** *Stuckey v. Young Exploration Co.,* 586 P.2d 726 (Okla.1978). See also Annot., "Products Liability: Alteration Of Product After It Leaves Hands Of Manufacturer Or Seller As Affecting Liability For Product-Caused Harm," 41 A.L. R.3d 1251, 1253 (1972).

■ Importers contend that the trial court erred in allowing widow to "change theories" in the middle of the trial. This contention is based upon importers' version of widow's expert testimony in pretrial deposition, where the witness testified that the modification by Simmons did not contribute to the accident. At trial the metallurgist testified that the defective design of the barrel, specifically the placement of the slide pin hole which resulted in the shaving away of 58% of the left side of the barrel that blew up, when combined with defective brazing between the barrels, allowed this failure to occur. Importers say the expert's testimony presented a new theory of defect and causation, i.e., defective brazing.

The record does not support importers' claim of surprise. Defective brazing was pleaded in the first and amended petitions and the metallurgist's deposition clearly indicates that defective brazing was one of the possible three causes for the right chamber to explode, especially in the area where the chamber wall had been reduced to permit the placement of the slide-ejector pinholes.

Importers' belief that the widow changed theories appears to be based upon a misunderstanding of the basis for the determination that the Simmons' modification did not contribute to the decedent's death. Counsel for importers consistently characterized the process by which the Simmons' rib was attached as "brazing". The record before the trial court on the motion for summary judgment, and upon which widow's metallurgical expert based his testimony, was that the Simmons' rib was "soldered" with temperatures that did not approach "brazing".

The metallurgist precisely stated in his deposition that attaching the floating rib to the top of the gun, under the installation conditions specified in Simmons' affidavit, could not have damaged the gun because soldering of this attachment to the gun was done by a relatively low temperature process. In order to cause damage between the barrels, a very high temperature would have been necessary.[4] Importers alluded to the modification of the gun when cross-examining the metallurgist. Without mentioning the modification, the expert stated that only heat near brazing temperature would have impaired the original brazing between the barrels. He steadfastly maintained: "It would have to be brazing and not solder."

### B.

■ Importers also claim error by the trial court in refusing to allow the cross-examination of the metallurgist from what importers contend is prior inconsistent testimony in his deposition. We note that importers have not complied with Rule 15 of the Rules of the Supreme Court, in that they have not identified any specific portion of the metallurgist's deposition which was precluded. The record does not contain a ruling by the trial court prohibiting the use of such deposition unless it is part

4. It is unrefuted that the floating rib was soldered to the top of the gun over the gun sights, and it is unrefuted that the two gun barrels were brazed together. Both soldering and brazing are methods of joining materials together, but there is a major and critical distinction between the two, as pointed out by widow's metallurgist:

"A brazing process—first, I think everybody is familiar with welding. Welding is where you use, say, steel to weld steel. You may have a welding rod that either you insert into a flame and melt and use it for welding, or you may have a heliarc or some type of automatic welding rod that comes down through the middle of the torch, and you melt the metal. And you use, say, steel for welding steel or aluminum for welding aluminum and so on.

"Then soldering is at the other end of the process. It's a very low melting temperature thing where you use a tin base material. It has a very low melting temperature. And I think you've all seen soldered drain pipes and so forth. Well, that's very low melting.

"Well, in between those is a process called brazing, using basically a copper base material. And that gives a higher strength. Where the solder is just sort of a mechanical bond, the copper braze actually has some fusion to the surface, and there can be an actual interaction with the steel and provide a strengthening or a bond across the interface. And this is the brazing process."

and parcel of the order in limine considering evidence of the Simmons' modification. Nevertheless, having reviewed the deposition, as noted above, we find nothing inconsistent with his testimony at trial such as would give rise to prejudicial error by its exclusion.

### C.

Importers allege that the trial court erred when it sustained the appellee's motion in limine which they argue precluded raising the defense of modification of the shotgun.

 A motion in limine is a pretrial motion requesting the court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to the moving party that curative instructions cannot prevent the predispositional effect on the jury. The use of the motion is not specifically authorized by statute or procedural rule, but it has been recognized by Oklahoma case law. The court's right to grant the motion is inherent in its right to admit or exclude evidence at trial. It affords the opportunity to the court to rule on the admissibility of evidence in advance, and prevents encumbering the record with immaterial or prejudicial matter.[5] In this case, the appeal from the granting of a motion in limine is actually an appeal from the rejection of evidence offered—not from the granting of the motion.

The evidence which was offered and precluded, in addition to the alleged inconsistent statements in widow's metallurgist's deposition, was that importers' expert would testify that any brazing defect which could now be discovered must have been the result of heat treatment applied to the gun by "Simmons and/or other people."[6] The trial court's order did not preclude importers from presenting evidence that repairs to the gun subsequent to the manufacture may have caused the defective brazing condition which widow's expert found contributed to the gun's failure. Without objection, importers elicited such speculation from widow's expert. The trial court did not expressly sustain an objection to any of the offered evidence. It simply did not "... permit any testimony indicating that the attachment of the floating rib by Simmons had anything to do with the cause of this explosion."[7]

The rationale for that ruling was the trial court's granting of summary judgment on that issue. At the hearing on the motion for summary judgment, all the parties were present, represented by counsel. Im-

---

5. See *Teegarden v. State,* 563 P.2d 660, 662 (Okla.Cr.1977); *State v. Johnson,* 183 N.W.2d 194, 195, 198 (Iowa 1971); *State v. Garrett,* 183 N.W.2d 652 (Iowa 1971). See also, J. Love, "Pretrial Exclusionary Evidence Rulings," Wis. L.Rev. 738, 752 (1967); and Annot., "Modern Status Of Rules As To Use Of Motion In Limine Or Similar Preliminary Motion To Secure Exclusion Of Prejudicial Evidence Or Reference To Prejudicial Matters," 63 A.L.R.3d 311 (1975); T. Davis, "Motions in Limine," 15 Clev.-Mar.L.R. 255, 257 (1966); H. Rothblott, D. Leroy, "Motion In Limine Practice," 20 Am.Jur. Trials, pp. 441–475 § 33 (1973), pp. 43–44, Supp.1982.

6. The only "offer of proof" which the record makes clear is as follows:

"... my offer of proof would be that this expert [widow's] has already testified that brazing in that area does have the tendency and has the capability of doing the exact destruction of the brazing that he is describing. [In fact, the expert testified that brazing could "possibly" have that effect].

"My expert would further testify, Dr. Block, would further testify that, although he thinks the gun was—as a matter of fact, he is of the opinion and certain from his examination that the gun was properly brazed at the time of manufacture.

"If there is any improper brazing that occurs at this time and that can be seen at this time, it is the result of the heat treatment put on this weapon by Simmons and/or other people.

"We don't know the full degree of heat treatment that may have occurred. But he would state that the heat treatment, if sufficient, would cause it."

7. Since, as noted above, any error must be predicated upon the exclusion of evidence, litigants would be well-advised to assist in appellate review by making sure the record includes a clear offer of proof in which the appellate court can readily determine the precise evidence which was offered, and that the trial court makes a ruling as to the admissibility of the precise evidence offered, not a general category of evidence.

porters were free to object and offer any evidence that the Simmons modification raised a fact question as to the cause of the gun's explosion. When the merits of this issue were litigated, importers offered no opposition. The record shows there was no controversy as to the fact that the modification did not contribute to the explosion of the shotgun. Counsel for widow and counsel for importers informed the court that they had no evidence that the modification caused the explosion.

■ Both parties argue on appeal that the other party is barred from taking a position opposite to the position adopted and in which they acquiesced·on the motion for summary judgment, citing *In Re Johnson*, 518 F.2d 246 (10th Cir.1975). Contrary to the argument advanced by importers, what is involved here is not "collateral estoppel," but "judicial estoppel." As stated in *In Re Johnson*, at page 252:

"Under the doctrine of judicial estoppel a party and his privies who have knowingly and deliberately assumed a particular position are estopped from assuming an inconsistent position to the prejudice of the adverse party. This rule ordinarily applies to inconsistent positions assumed in the course of the same judicial proceedings, or in subsequent proceedings involving identical parties and questions. See 31 C.J.S. Estoppel §§ 117, 118 and 119." [8]

■ The importers, despite their knowledge that widow's metallurgist had found defective brazing as a possible cause of the explosion, stood mute at the hearing on the motion for summary judgment at which the merits of Simmons' responsibility for this accident were determined. They acquiesced in the determination that no question of fact existed as to Simmons' responsibility, and now want to be able to introduce evidence which they contend will show that Simmons may be responsible, instead of importers.[9]

The trial court knew what had transpired at the hearing on the motion for summary judgment and was in a better position than this Court to determine the inequity which would be allowed if the modification evidence offered by importers was introduced. We find that the trial court did not abuse its discretion in refusing to admit the evidence offered at trial on the Simmons' modification of the gun.

## II.

■ Although no authority is cited in support of the argument, appellants contend that the trial court made improper rulings when it: allowed the death certificate to be introduced, and refused to let appellants explain that bankruptcy was a partial cause for the nine year delay from the time the case was filed until the trial date. It is not error to refuse to admit evidence which does not prove or disprove any fact at issue in the case.[10]

■ The appellants' chief concern is that the court requested that the testimony of an expert witness be condensed. Appellants failed to object to the allegedly prejudicial remarks of the trial court, nor did they explain how they were prejudiced ei-

---

8. See also *Slyman v. Alexander*, 126 Okl. 232, 259 P. 224 (1927); *Magnolia Petroleum Co. v. Ouart*, 200 Okl. 258, 192 P.2d 698 (1947); *State ex rel. Commissioners of Land Office v. Keller*, 264 P.2d 742 (Okla.1953). Since both parties suggest that the context of this case is appropriate for the doctrine's application, we need not determine the effect of statements in *Maxfield v. Maxfield*, 258 P.2d 915 (Okla.1953), and *Holland v. Perrault*, 312 P.2d 976 (Okla.1957) and cases cited therein, that the "position" must have been successfully maintained in previous action in which final judgment had been rendered. However, we note that all such cases involved later actions between the parties, and not the same proceedings.

9. In fact, the offered evidence still does not show that the Simmons' modification was responsible for the explosion. Importers have offered no evidence which disputes the fact that the rib was "soldered" at a temperature below that necessary to affect the manufacturer's brazing.

10. *Marcum v. Zaring*, 406 P.2d 970–71 (Okla. 1965).

ther by the rulings or the comments.[11] Before the error of alleged prejudicial statements by the trial judge may be preserved for appeal, the statements by the court, the objections thereto, and the court's ruling thereon, must be recorded by the official court reporter at the time they are made. In the absence of a ruling by the trial court on the asserted error, there is nothing for this Court to review, and it cannot be raised for the first time on appeal.[12]

▌ We do caution that comments made during the trial which influence the jury concerning the merits of the case, or affect the substantial rights of the litigants, constitute grounds for reversal. However, as long as counsel is not unduly restricted, his knowledge challenged, or his motives impugned, the court may direct counsel to refrain from delay and may comment on a waste of time.[13]

### III

The appellants assert that the trial court committed reversible error when it instructed the jury on proximate cause.[14]

The appellants contend, under the court's instruction of proximate cause, causation results if a defect or potential inadequacy of the weapon concurs with some other cause acting at the same time, i.e., over pressurization, substantial modification or misuse.

▌ The same argument was posed in *Fields v. Volkswagen America, Inc.*, 555 P.2d 48, 57 (Okla.1976). A careful comparison of the instruction [15] approved by this Court in *Fields* with the instruction given, reflects that the instructions are virtually identical. Instructions are sufficient when, considered as a whole, they present the law which is applicable to the issues. A judgment will not be disturbed on appeal unless it appears reasonably certain that the jury was misled by allegedly erroneous instructions.[16] Under the circumstances of this case, the instructions were adequate, did not result in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right or cause reversible error.[17]

"Can you do it fairly briefly?"

---

11. A plausible, but not convincing argument in a brief which is unsupported by citations of authority is not sufficient to overcome the presumption in favor of the correctness of the judgment of the trial court. *Keel v. MFA Mut. Ins. Co.*, 553 P.2d 160, 161 (Okla.1976). Assignments of error which are not argued or supported in the brief with citations of authority will generally be treated as waived. *Peters v. Golden Oil Co.*, 600 P.2d 330 (Okla.1979).

12. *National Foundation Life Ins. Co. v. Loftis*, 425 P.2d 946, 950 (Okla.1966); *Hansen v. Village of Ralston*, 147 Neb. 251, 22 N.W.2d 719, 721 (1946); *Holcombe & Hoke Mfg. Co. v. Waters*, 109 Okl. 107, 235 P. 198, 199 (1925); *Missouri O. & G. Ry. Co. v. Flanagan*, 40 Okl. 502, 139 P. 696 (1914); *Reedy v. Weathers*, 472 P.2d 914, 919 (Okla.1970).

13. In *Empire Oil & Refining Co. v. Fields*, 188 Okl. 666, 112 P.2d 395, 400, 401, Appeal dism'd., 314 U.S. 572, 62 S.Ct. 79, 86 L.Ed. 463 (1941), no prejudice was found by the Court's comments of: "We'll be here until Christmas finishing this lawsuit," and "Let's stumble along."
In this case, the court's statements were"
"We'll hope that you can condense your examination of this witness." .
"Any members of the jury have any questions of Dr. Block concerning any of these formula?"

14. Instruction No. 8 given by the trial court provides:
"The 'proximate cause' of any injury as that expression is used in these instructions, means the cause which in its natural and continuous sequence produces the injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it brings about the injury."

15. The challenged instruction in *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 57 (Okla. 1976) defined proximate cause as:
"... 'that cause which, in natural and probabl[e] sequence, brought about the injury alleged. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, brings about the injury.' "

16. *Smith v. United States Gypsum Co.*, 612 P.2d 251, 256, 7 A.L.R. 4th 147 (Okla.1980).

17. Pursuant to 20 O.S.1981 § 3001.1:
"No judgment shall be set aside or new trial granted by any appellate court of this state in

## IV.

Appellants charge that the trial court erred when it refused to sustain their demurrer to the evidence and motion for directed verdict.

■ Because appellants sought to elicit evidence in support of their defense after they demurred to appellee's evidence, they waived any assignment of error with regard to the trial court's overruling their demurrer.[18]

■ When the trial court considers a demurrer to the evidence or a motion for directed verdict, it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the demurrant or movant. Either motion should be overruled in the absence of proof which tends to show any right to recover.[19] There was conflicting evidence concerning the cause of the explosion: appellee offered evidence that the explosion was due to defective design, materials, and manufacture; appellant offered evidence that the gun exploded as a result of misuse and abuse. The trial court properly overruled appellants' motions.

## V.

■ The appellants argue that a verdict for damages in a personal injury suit does not bear post-judgment interest on the pre-judgment interest authorized by 12 O.S.1981 § 727(2).[20] This Court determined in *Holland v. Dolese Co.*, 643 P.2d 317, 324 (Okla.1982) that pre-judgment in-

terest must be added to the award in the verdict, and in *Walker v. St. Louis-San Francisco Ry. Co.*, 671 P.2d 672 (Okla. 1983) it was determined that post-judgment interest is to be applied to the judgment entered in a personal injury action, consisting of the verdict awarded and pre-judgment interest.

AFFIRMED.

LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

BARNES, C.J., SIMMS, V.C.J., and OPALA, J., concur in part, dissent in part.

any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

**18.** *Osburn v. Bendix Home System, Inc.,* 613 P.2d 445, 448 (Okla.1980), citing *Chicago, Rock Island and Pacific Railroad v. Kinsey,* 372 P.2d 863 (Okla.1962); *McMillan v. Lane Wood & Company,* 361 P.2d 487, 491 (Okla.1961); *Oklahoma City-Ada-Atoka Railroad Company v. Nickels,* 343 P.2d 1094, 1096 (Okla.1959).

**19.** *Austin v. Wilkerson,* 519 P.2d 899–900 (Okla. 1974); *Fletcher v. Meadow Gold Co.,* 472 P.2d 885, 888 (Okla.1970); *Condo v. Beal,* 424 P.2d 48, 51 (Okla.1967); *Colorado Interstate Gas v. Wheeler,* 344 P.2d 1055, 1057 (Okla.1959).

**20.** It is provided by 12 O.S.1981 § 727(2) in pertinent part:

"When a verdict for damages by reason of personal injuries is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at the rate of ten percent (10%) per year from the date the suit was commenced to date of verdict, . . ."