2004 OK CIV APP 69

Janice CLARK, surviving spouse and next friend of James Clark, deceased; and as mother and next friend of Madison Clark, a minor child of Janice Clark and James Clark, Plaintiff/Appellant,

v.

Trivia TURNER, Enterprise Leasing Company–Southwest and Enterprise Rent–A–car, Defendants/Appellees.

No. 99,026.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 24, 2004.

Robert Lee Rainey, James Richard Martin, Jr., Joseph C. Schubert, Rainey, Goodwin, Mee & Martin, L.L.P., Oklahoma City, OK, Benjamin L. Barnes, Law Office of Benjamin L. Barnes, Edmond, OK, for Plaintiff/Appellant.

Don R. Martin, Jr., The Martin Law Firm, Edmond, OK, for Defendant/Appellee, Turner.

James E. Green, Jr., M. Freeman–Burney, Robert D. James, Conner & Winters, P.C.,

Tulsa, OK, for Defendants/Appellees, Enterprise Southwest and Enterprise Rent–A–Car.

Opinion by RONALD J. STUBBLEFIELD, Acting Presiding Judge:

¶ 1 This is a plaintiff's appeal from orders of the Trial Court entering judgment on jury verdict in favor of defendants, summarily adjudicating certain claims, and ruling on pre-trial motions in limine. Based on our review of the record on appeal and applicable law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 This action arises from a series of accidents involving multiple vehicles which occurred early in the evening on August 5, 1999. The sky was overcast, and the highway was wet from intermittent rain and mist. James Clark, a member of the Midwest City Fire Department (MFD), was part of a rescue unit (Unit 2) that responded to a one-car collision on westbound highway I–40 near Air Depot Road in Oklahoma County. Accompanying Unit 2 was an MFD fire truck (Ladder 2). Unit 2 parked aside a concrete median barrier at the accident scene, and Ladder 2 parked approximately 100–150 yards behind Unit 2. Ladder 2, which had stopped at the end of a curve, just beyond the crest of an overpass hill, was blocking the far left lane of travel.

¶ 3 As MFD personnel completed work on the initial collision, a vehicle driven by Defendant Trivia Turner collided with Ladder 2. The vehicle she was driving had been rented to her for her personal use by her employer, Enterprise Leasing Company–Southwest (hereafter Enterprise SW).

¶ 4 Clark and another MFD member, Steve Shipman, went to attend to Turner, who had exited her vehicle, as a third vehicle, driven by Shawn Fisher, crested the hill. In attempting to stop, Fisher locked his brakes and his car spun out of control. His vehicle slid backward along the concrete barrier,

moving toward the accident scene, and it crashed between the vehicles and the barrier, striking and injuring Clark, Shipman and Turner. A fourth vehicle rounded the curve, and came over the hill in the middle lane. The driver of that vehicle saw Turner's vehicle and Ladder 2, started to brake, and was attempting to move into the right-hand lane when her vehicle slid into the far left lane and collided with the back of Turner's vehicle.

¶ 5 Clark was seriously injured by the impact from the Fisher vehicle. As a result of his injuries, he died three days after the accident. Clark was survived by his wife, Plaintiff Janice Clark, and a daughter, Madison Clark.

¶ 6 In 1999, Plaintiff filed her first lawsuit against Turner, Enterprise SW and Enterprise Rent–A–Car Company.[1] She alleged that Turner was negligent in the operation of her vehicle and that she had "consumed and or used illegal or illicit drugs that adversely affected her ability to drive" and kept her from stopping or avoiding the collision. According to Plaintiff, it was only because her deceased husband had responded to assist Turner that he was placed in a position to be harmed by the Fisher vehicle.

¶ 7 Plaintiff claimed Turner's employer, Defendant Enterprise SW, was liable based on *respondeat superior* theory, negligent entrustment of the vehicle to Turner, and negligent hiring, retention and supervision. Plaintiff claimed Enterprise SW knew or should have known that Turner consumed or used illegal drugs that would adversely affect her ability to drive, and knew or should have known she was unfit and unqualified to be hired and continue in its employ. Plaintiff further alleged that Enterprise SW, as the owner of a for-rent vehicle driven by an inadequately insured driver, had statutory joint and several liability under 47 O.S.2001 § 8–102.

¶ 8 In regard to Defendant Enterprise Rent–A–Car Company, Plaintiff alleged that it was a national car rental company doing

---

1. Steve Shipman and his wife also filed lawsuits against these Defendants, and all the cases were consolidated for discovery and trial. Neither of the Shipman Plaintiffs has appealed the judgment on jury verdict.

business under the name Enterprise SW and was financially responsible for Enterprise SW's losses. Plaintiff further claimed Enterprise Rent–A–Car was a joint venturer in Enterprise SW's operations, and was liable because Enterprise SW was the agent, servant and/or mere instrumentality of Enterprise Rent–A–Car.

¶ 9 The parties engaged in extensive discovery. Plaintiff focused on a clinical urine screen allegedly performed on Turner during her post-accident treatment at the hospital, which indicated the presence of cannabinoids. Plaintiff was prepared to offer testimony from experts, psychologist Dr. Marcelline Burns, and retired law enforcement officer Thomas Page, to the effect that the accident must have occurred because Turner was under the influence of marijuana at the time of the accident.

¶ 10 Defendants filed a motion in limine seeking to exclude this evidence from the jury at trial. Defendants pointed out chain of custody and other reliability problems with the urine screen. They also asserted, as a matter of scientific fact, that the urine screen could not show actual intoxication or a specific level of the chemical THC in the blood, but could only indicate (if not a false positive) some level of inactive metabolite in Turner's urine. With supporting evidentiary materials, Defendants emphasized that a person can test positive on a urine screen for up to one month or more after ingesting marijuana, while impairment caused by marijuana lasts only hours. Defendants also submitted excerpts from the depositions of various witnesses—including firemen and police officers at the accident scene—who testified that they (1) did not smell marijuana on Turner at the accident scene; (2) found no drug paraphernalia on her person or in her car; and (3) did not observe her appearing or acting as though under the influence of a drug. Turner's supervisor at Enterprise SW, who had worked with her all day, testified she did not appear to be under the influence of drugs and was "perfectly normal" when she left work shortly before the accident.

¶ 11 The Trial Court ruled the urine screen was not relevant, and therefore inadmissible, because the most the test could show—if not

falsely positive—was that sometime in the near or distant past Turner might have smoked marijuana. From review of the evidentiary materials the Trial Court found "no evidence that [Turner] was, at the time of the accident, under the influence of the drug." The Trial Court further found that, even if relevant, the slight value of the proffered urine screen would be substantially outweighed by the danger of unfair prejudice. Taking guidance from *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Trial Court excluded the testimony of Dr. Smith, because the doctor, who was not a toxicologist, improperly inferred intoxication from the urine screen and the simple fact that Turner had been involved in an accident. After receiving the unfavorable ruling by the Trial Court on Defendants' motion in limine, Plaintiff voluntarily dismissed her action without prejudice on November 13, 2000.

¶ 12 Plaintiff re-filed her action on May 22, 2001. Eventually, the parties stipulated that Turner was not in the course and scope of her employment at the time of the collision. As a result, the Trial Court found that Plaintiff had abandoned her claim for *respondeat superior* liability and dismissed that particular claim/theory of recovery against the Enterprise Defendants.

¶ 13 The Enterprise Defendants were also successful in gaining summary adjudication of Plaintiff's negligent entrustment claims. Aside from the alleged drug use by Turner, Plaintiff had urged that the jury be allowed to consider the fact that Turner had been involved in two prior accidents while driving Enterprise SW vehicles in the course of her employment and, as a result, had been placed on probation by the company.

¶ 14 However, it was uncontroverted that Turner's two prior accidents had occurred in cramped parking lots when she was backing large vehicles (a Chevrolet Suburban and an Econoline shuttle bus), which she was unaccustomed to driving. The accidents had caused minor property damage but neither involved any personal injury. Furthermore, regarding Turner's driving on public roadways, Defendants submitted evidentiary materials to the effect that: (1) she had a valid

Oklahoma drivers license that had never been revoked; (2) she regularly picked up and delivered vehicles in her job for Enterprise SW, driving on the roadway virtually every day for over one year prior to the subject accident, and during that time she had had no accidents or moving violations; and (3) she had rented cars from Enterprise SW for her personal use some 33 times prior to the date of the accident with no mishaps. Based upon these uncontroverted facts, the Trial Court found as a matter of law that Plaintiff failed to establish any basis for a negligent entrustment claim.

¶ 15 The case eventually proceeded to trial, but ended in a mistrial on the second day. The second trial commenced January 6, 2003.

¶ 16 Testimony was disputed but revealed that Turner had been driving westbound in the far left lane of I–40. She had left work for the day and was on her way to see a movie. As she came over the hill, she observed Ladder 2 in front of her, but she claimed she was unable to change lanes because a semi-truck was traveling in the center lane. She braked hard and managed to stay in her lane, but was unable to stop in time. Accident reconstruction evidence indicated that Turner had slowed to approximately 20 miles per hour, and if she had had 25–30 more feet, she could have stopped and avoided colliding with Ladder 2.

¶ 17 After Plaintiff rested, Defendants demurred to the evidence. Defendant Enterprise Rent–A–Car claimed Plaintiff had failed to present any evidence in support of her joint venture or agency theories of liability. Defendants Turner and Enterprise SW claimed that Plaintiff failed to prove that Turner was negligent, or, even if negligent, that her actions were the proximate cause of the injuries to Firefighters Clark and Shipman. Enterprise SW argued that the subsequent Fisher collision was not reasonably foreseeable and was a supervening or intervening cause that severed any connection between Turner's acts and the firefighters' injuries. All Defendants demurred to the claim of punitive damages asserted by Plaintiff.

¶ 18 Plaintiff advised the Trial Court that she no longer asserted a claim for punitive damages and the Trial Court sustained the demurrer on that issue, but took the remaining grounds for the demurrers under advisement. Defendants then presented their evidence.

¶ 19 At the close of all the evidence, Defendants renewed their demurrers and moved for directed verdicts. The Trial Court denied the motion of Turner and Enterprise SW as to the issue of causation. However, it granted judgment in favor of Enterprise Rent–A–Car on all of Plaintiff's claims.

¶ 20 In closing arguments, defense counsel maintained that Turner was faced with a sudden emergency and had reacted reasonably under the circumstances. Defendants argued to the jury that the accident was unavoidable—that there were no traffic cones or warning signs behind Ladder 2, and no firefighter or other law enforcement officers were warning oncoming traffic. They also emphasized the fact that no firefighters were injured as a result of Turner's collision with the back of Ladder 2. Both Defendants attributed the cause of the accident to the fact that the firetruck was parked over the top of the hill where people could not see it in time to avoid hitting it if they were driving in the left lane.

¶ 21 The jury returned unanimous verdicts in favor of Defendants in all three consolidated cases. Plaintiff appeals.

### DISCUSSION OF ISSUES RAISED ON APPEAL

#### I. The Liminal Rulings

¶ 22 Plaintiff asserts that the cornerstone of the successful defense to all her claims was the Trial Court's erroneous "**exclusion of Turner's positive urine drug screen showing marijuana was in her system when she struck Ladder 2.**" (Emphasis by Plaintiff.) According to Plaintiff, once armed with this ruling Defendants Turner and Enterprise were able to (1) prevent her expert witnesses from testifying at trial regarding Turner's marijuana use and its role in causation; (2) bar the use of adverse inferences arising from Turner's assertion of a Fifth Amendment self-incrimination privilege

on her prior drug use; and (3) obtain summary adjudication on her negligent entrustment claim. Defendants' response to this argument is that Plaintiff failed to preserve any alleged error in regard to pretrial rulings on motions in limine because her counsel did not make a formal offer of proof at trial, setting out the substance of the excluded evidence, and thereby affording the Trial Court the opportunity to make a final in-trial ruling on the issue.

¶ 23 Motions in limine are recognized by Oklahoma case law. *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 15, 687 P.2d 121, 127. A motion in limine is a motion preliminary to trial to preclude the introduction of prejudicial matters to the jury, and is advisory until finally determined at trial. *Christian v. Gray*, 2003 OK 10, n. 22, 65 P.3d 591 (citing *Myers v. Missouri Pac. R. Co.*, 2002 OK 60, n. 66, 52 P.3d 1014). *See also Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc.*, 1985 OK 66, ¶ 12, 713 P.2d 572, 579 (in limine rulings are preliminary and advisory in nature until point in trial at which evidence would have been admitted but for the motion). Consequently, liminal rulings are not appealable, *Myers*, 2002 OK 60 at n. 66, 52 P.3d 1014, and only evidentiary rulings during trial remain subject to review. *Hartford Ins. Co. v. Dyer*, 2002 OK CIV APP 126, ¶ 15, 61 P.3d 912, 914. *See also Messler*, 1984 OK 35 at ¶ 15, 687 P.2d at 127 (appeal from the granting of a motion in limine is actually an appeal from the rejection of evidence offered, not from the granting of the motion).

¶ 24 If evidence is excluded by an in limine ruling, the proponent must, at the appropriate time during trial (and out of the hearing of the jury), make an offer of proof for the record explaining what the evidence will show and why it is admissible. *Middlebrook*, 1985 OK 66 at ¶ 12, 713 P.2d at 579. The Oklahoma Supreme Court has explained that the party against whom a liminal ruling is made must re-press the issue at trial and obtain a final order. *Myers*, 2002 OK 60 at n. 66, 52 P.3d 1014. The Court cautioned litigants regarding how they must satisfy these requirements:

Since ... any error must be predicated upon the exclusion of evidence, litigants would be well-advised to assist in appellate review by making sure the record includes *a clear offer of proof in which the appellate court can readily determine the precise evidence which was offered and that the trial court makes a ruling as to the admissibility of the precise evidence offered, not a general category of evidence.*

*Messler*, 1984 OK 35 at n. 7, 687 P.2d 121 (emphasis added).

¶ 25 We have closely examined the record to determine whether the offer of proof requirement has been satisfied. At the conclusion of the first day of trial, after the parties had completed their opening statements but before any evidence had been presented, counsel for Plaintiff inquired, off the record, regarding "rulings made in the prior trial." Out of the presence of the jury, the following transpired:

THE COURT: Mr. Barnes [Plaintiff's counsel] raised with me the question of whether or not rulings made in the prior trial were still rulings and the law of the case in this trial, and that's the order of the Court unless there's some objection to it.

Did you have any further record you wanted to make?

MR. BARNES: That's the only record I was wanting to make to just preserve it, your Honor.

These prior rulings are not identified in the transcript.

¶ 26 During trial, after Defendants had demurred to Plaintiff's evidence, the following discussion occurred between counsel for the Shipmans (who have not appealed) and the Trial Court:

MR. TRAVIS: The other thing which I do need to do, I guess, Judge, and get it in maybe at this stage, as opposed to later, you remember we had those issues that the Court sustained motions on that we made offers of proof, and I'll just file those with you.

THE COURT: All right.

MR. TRAVIS: I suppose this would be the appropriate stage to put that in.

THE COURT: Protect your own record. Again, the pretrial rulings were not identified in the transcript, and it appears that the "offers of proof" referred to by counsel for the Shipmans were not actually filed of record during trial. We must conclude that neither this purported offer of proof nor the general inquiry by Plaintiff's counsel regarding "rulings made in the prior trial" preserved the issues of the liminal rulings for appellate review.

¶ 27 Although the Oklahoma Supreme Court has not waived its commitment to the pronouncements of *Middlebrook* and *Messler,* Plaintiff claims in her reply brief that "no offers of proof were, or should have been necessary at trial" and would have been a "useless gesture" because (1) the Trial Court's ruling on Defendants' motion in limine was "prohibitive absolute;" and (2) the identical evidentiary issues were the subject of the Trial Court's summary adjudication of the negligent entrustment claim. In the alternative, Plaintiff asserts that the "offer of proof" requirement is archaic. She urges this Court to adopt, as a matter of public policy, a federal court standard for determining whether the proponent of evidence is required to make an in-trial offer of proof after a motion in limine has been granted.

¶ 28 On this issue, we first reject Plaintiff's assertion that her objection to the summary adjudication of the negligent entrustment claim preserved her objection to exclusion at trial of the urine drug screen and expert testimony regarding Turner's alleged marijuana use and its effect on causation. The Trial Court's ruling on the latter matters was not final and was subject to reconsideration, in light of specific facts and circumstances adduced at trial, at any time before entry of judgment. *See Reams v. Tulsa Cable Television, Inc.,* 1979 OK 171, ¶ 6, 604 P.2d 373, 376. Certainly, the negligence of Turner remained an issue for trial, and for these reasons we do not find that Plaintiff's objection to summary adjudication of the negligent entrustment issue satisfied the "offer of proof" requirement pertaining to the excluded marijuana-related evidence and expert testimony.

¶ 29 In *U.S. v. Mejia–Alarcon,* 995 F.2d 982 (10th Cir.1993), the Tenth Circuit held that proceedings on a pretrial motion in limine may preserve an objection to admission or exclusion of evidence at trial if (1) the matter was adequately presented to the trial court; (2) the issue is of the type that can be finally decided in a pretrial hearing; and (3) the trial court's ruling is definitive. *Id.* at 986–87.[2] Plaintiff maintains that Oklahoma's rules regarding preservation of error when evidence is excluded under a motion in limine should be revised and modernized—that an analysis of whether she waived the alleged error should be made based on the federal court rule rather than the standard traditionally applied in this State.

¶ 30 However, we note that the Court in *Mejia–Alarcon,* despite its holding, stressed that even "'[u]nder the best of circumstances, counsel must exercise caution in relying exclusively upon rulings made in connection with pretrial motions in limine as the basis for preserving claims of error in the admission and exclusion of evidence.'" *Id.* at 988 (quoting *U.S. v. Sides,* 944 F.2d 1554, 1559 (10th Cir.1991), *cert. denied,* 502 U.S. 989, 112 S.Ct. 604, 116 L.Ed.2d 627 (1991)). And the court further warned counsel:

> Prudent counsel will renew objections at trial, because the three-part test we enunciate today carries with it the inherent risk that the appellate court might find that the objection was of the type that must be renewed and that the party, by relying on the motion in limine, has waived the objection. Indeed, most objections will prove to be dependent on trial context and will be determined to be waived if not renewed at trial.

*Id.* at 988.

¶ 31 In any event, the Oklahoma Supreme Court has not endorsed the federal court rule, and the Oklahoma Evidence Code contains no provision similar to the 2000 amendment to Federal Rule 103. *See* 12 O.S.2001 § 2104(A)(2). This Court lacks the authority

---

**2.** *See also* Fed.R.Evid. 103(a) (effective Dec. 1, 2000)("Once the court makes a definitive ruling on the record either admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

to diverge from established appellate practice and apply new standards for determining whether an issue has been preserved for review. We find that Plaintiff, having failed to preserve the issues of the liminal rulings for appellate review as required by extant case law, has waived this proposition of error.[3]

## II. The Negligent Entrustment Claim

■ ¶ 32 Plaintiff next claims the Trial Court erred in its summary adjudication of her negligent entrustment claim against Enterprise SW. Citing *Green v. Harris*, 2003 OK 55, 70 P.3d 866, Plaintiff asserts that an actionable claim for negligent entrustment exists, and a vehicle owner is liable for damages caused by one driving his vehicle, when the owner allows the other driver to operate the vehicle and knows or reasonably should know that the other driver is careless, reckless or incompetent to operate it. In reliance on *Green*, Plaintiff asserts that the question of negligent entrustment is one of fact for the jury, and may be proved by circumstantial as well as positive or direct evidence. She argues that evidence of Turner's marijuana use and involvement in prior accidents was sufficient to defeat summary adjudication of the claim.

¶ 33 As further grounds for reversal, Plaintiff asserts that the negligent acts of Turner and Fisher were not supervening causes that excused Enterprise SW's negligent entrustment of a vehicle to Turner. She maintains that a question of fact exists "as to whether Turner and/or Fisher's involvement, in a multi-vehicle, multi-impact collision, was a proximate cause of [her] damages," and that in negligent entrustment cases the issue of proximate cause is for the jury unless there is no evidence from which the jury could reasonably find a causal nexus between the negligent act and the resulting injury.

¶ 34 Defendants' response to this proposition of error is that, in light of the jury's verdict finding that Turner was not negligent and/or did not cause the accident, Plaintiff's evidence is insufficient to establish a negligent entrustment claim. We agree with Defendants.

¶ 35 Plaintiff argues that entrusting a vehicle to Turner, in view of her past driving record and alleged illegal drug use, was an independent act of negligence by Enterprise SW which the jury should have been allowed to consider.[4] However, in making her argument in support of this proposition of error, Plaintiff has omitted discussion of a necessary element of a claim for negligent entrustment—*that injury result from the driver's careless and reckless operation of the vehicle.* *Green*, 2003 OK 55 at ¶ 23, 70 P.3d at 871. *See also Anthony v. Covington*, 1940 OK 59, 187 Okla. 27, 100 P.2d 461; *Coker v. Moose*, 1937 OK 67, 180 Okla. 234, 68 P.2d 504.

■ ¶ 36 It is the negligence of the driver that provides the causal connection necessary to establish liability in tort between the negligence of the entrusting owner and injuries sustained by the plaintiff. In *Anthony*, the Court explained:

[I]f an accident occurs in which the driver is not negligent, there is no causal connec-

---

3. As some consolation to Plaintiff, we choose to note that, in any event, we would uphold the Trial Court's ruling. The Trial Court ruled that any minimal probative value of the urine screen would be substantially outweighed by the considerable danger of unfair prejudice. We agree with that conclusion. The urine screen did not demonstrate that Turner was under the influence of marijuana, while a plethora of other evidence (previously delineated) supports the conclusion she was not. Thus, because the evidence had a considerable prospect of unfair prejudice, the Trial Court was free to deny admission of the evidence under 12 O.S.2001 § 2403. In addition, the testimony of Dr. Smith was simply without scientific basis. It is not controverted that the urine screen result did not indicate any recent marijuana usage, yet the doctor was pre-

pared to infer intoxication merely from the fact of Turner's involvement in an accident. This evidence does not have a valid scientific basis, particularly where there was a plausible reason for the accident (location of the MFD vehicles in relation to the curve and the hill), and there were two other accidents at that scene immediately after Turner's. We conclude Dr. Burns' testimony was correctly excluded by the Trial Court under a *Daubert* analysis.

4. We have already determined that Plaintiff failed to preserve for review the issue of exclusion of drug-related evidence and expert testimony. Turner's prior parking lot accidents would not have been admissible to prove *her* negligence. *Green*, 2003 OK 55 at ¶ 18, 70 P.3d at 870.

tion between the owner's precedent negligence and the injury itself. . . . [I]t is the combined negligence of the owner and operator which fastens liability upon the owner. Otherwise, the plaintiff's recovery would rest on no stronger basis than the "but for" doctrine.

. . . .

Strictly speaking, the liability is not derivative,—it is dependent.

*Anthony,* 1940 OK 59 at ¶¶ 7–8, 187 Okla. 27, 100 P.2d at 463.

¶ 37 The effect of the Court's holding in *Anthony* is to require an affirmative finding of the driver's negligence because "dependent liability of the owner cannot be imposed in the face of exoneration of the defendant whose negligent acts are claimed to have been the immediate cause of plaintiff's injury." *Id.* at ¶ 9, 187 Okla. 27, 100 P.2d at 463.

¶ 38 The issue of proximate cause was submitted to the jury, with instructions on direct, concurrent and intervening causes and instructions regarding comparative negligence of non-parties. The jury returned a unanimous verdict finding the issues in favor of Turner and Enterprise SW on the "Pink Verdict Form," which they were instructed to use if they found the accident was directly caused by contributory negligence of James Clark, or if it found that Plaintiff "failed to prove that Defendant Trivia Turner was negligent."

¶ 39 We will not revisit the proximate cause issue. In view of the jury's determination on the issue of Turner's negligence, we find no reversible error in the Trial Court's summary adjudication of Plaintiff's negligent entrustment claim in favor of Enterprise SW.

### III. The Rental Contract and Cap on Self–Insurance Liability

¶ 40 Plaintiff's final proposition of error concerns the Trial Court's summary adjudication that Turner was operating the Enterprise SW vehicle under a valid rental contract. Plaintiff had asserted that the rental contract was void because it had expired by its written terms on July 30, 1999, several days prior to the accident, and the oral agreement between Turner and Enterprise SW did not properly extend the contract.

According to Plaintiff, Turner became a mere permissive user, outside the terms of any rental agreement, and, as a result of her having insufficient insurance coverage, Enterprise SW became jointly and severally liable with Turner for any damages caused by Turner when operating the vehicle.

¶ 41 The effect of the Trial Court's summary adjudication of this issue, and its reliance on *Woods v. Budget Rent–A–Car Systems,* 1992 OK 26, 825 P.2d 1350, was to limit liability of Enterprise SW, as a self-insured owner of a for-rent vehicle, to $20,000 per person and $40,000 per accident under 47 O.S.2001 § 8–102. Plaintiff claims that *Woods* is distinguishable and it was error for the Trial Court to limit liability of Enterprise SW.

¶ 42 However, as explained above, without a finding of Turner's negligence, liability of Enterprise SW did not attach. Therefore, this is a moot issue which we will not address.

### CONCLUSION

¶ 43 We find none of Plaintiff's contentions of error availing of reversal. Accordingly, we affirm the judgment entered on jury verdict.

¶ 44 AFFIRMED.

GOODMAN, J., and COLBERT, C.J. (sitting by designation), concur.