**GRAND FEDERAL SAVINGS BANK, Appellee,**

v.

**Victor KLINGENBERG and Betty Klingenberg, husband and wife, Appellants.**

**OMR Supply Co.; Victor Klingenberg d/b/a OMR Supply Co.; Betty Klingenberg; Carl Fowler d/b/a Benton County Realty; Transworld Systems, Inc. d/b/a Credit Management Systems, Inc., a Colorado corporation; and the First State Bank of Ketchum, Ketchum, Oklahoma, Defendants.**

**No. 74599.**

Court of Appeals of Oklahoma, Division No. 2.

Dec. 10, 1991.

Phil Thompson, Jay, and J. Michael Medina, Holliman, Langholz, Runnels & Dorwart, P.C., Tulsa, for appellee.

Frank R. Hickman, Hickman & Hickman, Tulsa, for appellants.

BRIGHTMIRE, Judge.

This action was commenced by a bank to obtain a judgment on two delinquent promissory notes and the foreclosure of two securing mortgages. Two defendant borrowers counterclaimed for damages sustained as a result of the bank's alleged

conversion of the borrowers' business assets, trespass upon their property, and interference with their business operations.

Judgment was entered on a jury verdict for the bank with respect to both its claim and the borrowers' counterclaim.

The borrowers appeal from an order overruling their motion for new trial.

I

■ The borrowers' first assignment of error is this: "Errors of the Court Regarding Instructions to the Jury."

This contention is set forth in general terms, *i.e.*, the "instructions were wholly insufficient and improper" because: (1) No instruction was given addressing "what is or is not reasonably commercial" which evidently had to do with instructions relating to the manner of the bank's self-help seizure and sale of the borrowers' business equipment and inventory; and (2) "no instruction ... set out fully the duty of the parties."

The supporting argument is that the "court 'must' instruct generally on issues presented by pleadings and the proof [and] on its own motion, to properly instruct the jury as to all fundamental issues of the case." *Young v. First State Bank*, 628 P.2d 707 (Okl.1981).

Although this is a correct principle of law, the problem here is that the first time the claim of fundamental error appears in the record is in the borrowers' brief on appeal. It was not raised in their motion for new trial, nor even mentioned as an issue in their petition in error.

Under these circumstances such issue is not cognizably presented. *Arkansas Louisiana Gas Co. v. Travis*, 682 P.2d 225 (Okl.1984).

II

The borrowers next complain of some requested instructions the trial court declined to give to the jury.

Here again the borrowers failed to lay an adequate foundation for judicial review. In their one-page argument the borrowers refer only to "our Requested Instruction No. IX" but neither it nor any other requested instruction appears in the brief, the motion for new trial or, for that matter, in the record. Moreover, there is nothing in the record to show what, if any, requested instructions were tendered at trial by the borrowers. *See Sadler v. T.J. Hughes Lumber Co.*, 537 P.2d 454 (Okl.App.1975).

There is nothing, therefore, for this court to review with regard to this proposition.

III

■ The borrowers' third assignment of error is that the trial court erred in allowing the prosecution of two lawsuits upon the same subject matter.

The supporting argument is that prior to instituting this foreclosure action, the bank had filed a "seizure" action in Arkansas where it replevined certain personal property covered by a security agreement. And in this action, the borrowers say, the bank is seeking a money judgment on the same note-related indebtedness—a defense raised in their answer and asserted during trial and one which is authorized by 12 O.S.Supp.1990 § 2012(B)(8), prohibiting "[a]nother action pending between the same parties for the same claim."

The short answer to this contention is twofold: (1) The replevin action had been dismissed by the time this lawsuit came to trial; and (2) the subject matter of the two claims is not the same—there being a fundamental legal and actual difference between a claim for possession of personal property and one seeking a money judgment on delinquent promissory notes. *See Phillips v. Barker*, 269 P.2d 337 (Okl.1954).

Hence, the trial court did not err in rejecting the borrowers' "another action pending" defense.

IV

■ Finally the borrowers complain of reversible irregularities with respect to the

post-judgment sale of subject mortgaged property and its confirmation.[1]

The complaint is that following the first scheduled sale of the property a second "auction" sale was held based on a "reappraisal" of the property for an amount $100,000 less than the "original appraisal" which was made without notice to the borrowers, without leave of court, and without regard to the true value of the property.

The record bears out such unusual procedure. It shows an appraisal of subject property was filed February 12, 1990, signed by three appraisers on November 24, 1989, estimating the fair market value to be $205,000.[2] This document is followed by another one without a file stamp entitled "Notice of Sheriff's Sale" signed by the sheriff on November 29, 1989, noticing that the property would be sold at public auction on January 2, 1990, subject to taxes and an appraisal value of $205,000. These two papers are followed by a third which bears a file stamp date of February 12, 1990, entitled "Affidavit." In it the three appraisers swear that subject property was viewed by them on November 24, 1989, and that their return "incorrectly indicated the value ... to be the sum of $209,000.00 [sic]," [3] and that the correct value which should have been stated is "the sum of $109,000.00".

On the same day, February 12, 1990, there was filed: (1) An alias special execution and order of sale issued by the court clerk; (2) an alias appraisal of $109,000; (3) an alias notice setting a sheriff's sale of the property on February 6, 1990; [4] (4) a

sheriff's return showing the bank bought the property for the full amount of the second appraisal ($109,000); and (5) a motion to confirm the sale and a notice of hearing the motion set for February 26, 1990.

On February 26, 1990, the trial court entered an order overruling the borrowers' objection to the sale and confirmation and confirmed the sale. The borrowers timely attacked the confirmation order in a motion for a new trial and when this was overruled they timely filed a supplemental petition in error seeking review of subject order.

We are of the opinion the borrowers' objection to the confirmation should have been sustained and a new court-supervised appraisal ordered. See Johnson v. Bearden Plumbing & Heating Co., 180 Okl. 586, 71 P.2d 715 (1937). There the court pointed out that 12 O.S.1981 § 801 dealing with execution of judgment liens requires that "property once appraised must thereafter be offered for sale twice before a reappraisal can be ordered." [5] Johnson, 71 P.2d at 716.

The bank accepts this as the law but, again citing Johnson, says that § 801 "presupposes a valid subsisting judgment, a valid execution, and a valid appraisement." Id. And here, the bank says the "initial appraisement being invalid, there was no need to recomply with 12 O.S.1981, § 801's requirements."

We cannot agree that the initial appraisement was invalid. The report of the

---

1. The borrowers executed two promissory notes on February 4, 1985—one for $62,718.06 and the other for $150,000—and executed securing mortgages on certain real estate—presumably their homestead.

2. See copy of the valuation and appraisal of the property in Appendix, page 1074.

3. The document shows a handwritten change of the acknowledgement date to November 29, 1989, from that which appears to have been written in by the notary public as January 2, 1990.

4. The bank also had a problem trying to figure out what date to put on the second appraisal. There were three handwritten changes. The

original date the appraisers were said to have signed it was February 12, 1990, this was changed to November 29, 1989, and then finally to December 27, 1989.

5. Title 12 O.S.1981 § 801 reads in part:

"In all cases where real estate has been or may hereafter be taken on execution and appraised and twice advertised and offered for sale, and shall remain unsold for the want of bidders it shall be the duty of the court from which such execution issued, on motion of the plaintiff, to set aside such appraisement and order a new one to be made, or to set aside such levy and appraisement and award a new execution to issue, as the case may require."

appraisers dated November 24, 1989, discloses that one of the appraisers handwrote the figure "$205,000" along with the figure "75.00" as the fee for each appraiser and all three appraisers signed the appraisal.[6] Notice was given reciting the value to be $205,000, that a sale was held January 2, 1990.

It is at this point the record grows suspect. The February 12, 1990, affidavit purports to have been signed by the appraisers on November 29, 1989, but shows on its face that the date was changed from what appears to have been originally a day in January 1990, written in by the notary public as the date of the document's execution.[7] In this affidavit the appraisers do not say there was a scrivener's error in reporting the $205,000 figure, but that the appraisal "incorrectly indicated the value of the said property to be the sum of $209,000 [sic]. The true and correct value which should have been stated ... is the sum of $109,000.00." In other words, the earlier appraisal was incorrect and they should have appraised the property for about half of that amount.

Execution of this affidavit in January 1990 after the first sale date under all the circumstances manifests a change of mind by the appraisers as to the value—a likely reason why the bank felt it necessary to back date it to November 29, 1990. And it was evidently for the same reason that the bank decided it would be wise to have the appraisers return a second appraisal for $109,000. As can be seen on a copy of the alias appraisal, the bank had difficulty deciding on which date the appraisal was to have taken place.[8]

The borrowers timely filed a written objection to the sale and its confirmation on the ground there was a change in the appraisement without notice to them and without an order of the court.

6. See copy of the report in Appendix, page 1074.

7. See copy of document in Appendix, page 1075.

8. Appendix, page 1076. Close scrutiny indicates an appraiser wrote in 2–12–90 after the word

At the February 26, 1990, hearing on the bank's motion to confirm the February 6 sale of the property to the bank for $109,000, the trial court said it examined "the file and proceedings herein, and particularly the Special Execution and Order of Sale and Sheriff's Return" and found that the borrowers' objection to the sale and confirmation should be overruled. The trial court also found that the sale conformed to its earlier order and the law "in all respects" and confirmed the sale.

We hold, however, that the trial court erred in overruling the borrowers' objection, and in approving the sale and confirming it.

Quite aside from all the suspicious circumstances surrounding execution of the affidavit and the second appraisal, the sale was invalid for at least two reasons: (1) The first appraisal was valid and, assuming there were no bidders at the first auction, § 801 required a second auction to be held; and (2) if there were no bidders at the second auction, then an order had to be obtained from the trial court authorizing a new appraisal.

This was not done and to us the circumstances surrounding the events leading up to the complained of sale as well as the sale itself manifest such gross irregularities as to render the sale void.

V

The judgment on the notes is affirmed, the order approving and confirming the sale of subject property is reversed, and the cause is remanded for further proceedings.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., concurs.

MEANS, P.J., concurs in result.

"DATED" and this was the date first written in the sheriff's certification, then changed to November 29 and finally changed to December 27, 1989!

1074

RECORDED IN _____ FILED
BOOK NO _____ PAGE _____

FEB 12 1990

IN THE DISTRICT COURT OF DELAWARE COUNTY, OKLAHOMA

~ ~ EARHON
~ CLERK

GRAND FEDERAL SAVINGS BANK,    )
                               )
              Plaintiff,       )
                               )
Vs.                            )            Case No. C-88-224
                               )
VICTOR KLINGENBERG, et al.,    )
                               )
              Defendants.      )

VALUATION AND APPRAISAL OF PROPERTY

We, GERRIG RICVIE _____, ALBERT WOOD _____, and JOHN ROBINSON _____, disinterested householders residing in Delaware County, State of Oklahoma, having been by Jim Earp, Sheriff of said County of Delaware, duly summoned to appraise the property levied on in this case, after being first sworn, do return that upon actual view of said premises and after having been on said premises, we find and estimate the same to be of total value as set forth to-wit:

> Lot 10, The Lee Estates Subdivision, according to the recorded plat thereof, Delaware County, Oklahoma,

$205,000 .

DATED: 11/24/89
FEES: 75.00 Each Appraiser
TOTAL: 225.00

STATE OF OKLAHOMA
                          ..ss
COUNTY OF DELAWARE

I do certify that the above named appraisers are disinterested householders, residents of Delaware County in said State and were by me duly summoned and sworn impartially to appraise the above described real property upon actual view thereof this _____ day of _____, 1989.

JIM EARP, Sheriff

RECORDED IN
BOOK NO. _____ PAGE _____

FEB 12 1990

IN THE DISTRICT COURT WITHIN AND FOR DELAWARE COUNTY
STATE OF OKLAHOMA

COURT CLERK

GRAND FEDERAL SAVINGS BANK,

       Plaintiff,    )
                    )
Vs.                    )    Case No. C-88-224
                    )
VICTOR KLINGENBERG, et al.,  )
                    )
       Defendants.   )

## AFFIDAVIT

STATE OF OKLAHOMA
          ..ss
COUNTY OF DELAWARE

    JOHN R. ROBINSON, GERRIE RITCHIE and ALBERT WOOD, being first duly sworn, upon oath, depose and state:

    That we viewed the property which is the subject matter of this action on the 24th day of November, 1989 and determined the fair market value to be the sum of $109,000.00. The Valuation and Appraisal dated November 24, 1989 and filed for record herein incorrectly indicated the value of said property to be the sum of $209,000.00. The true and correct value which should have been stated in said Valuation and Appraisal is the sum of $109,000.00.

    Further affiants saith not.

_____
JOHN R. ROBINSON

_____
GERRIE RITCHIE

_____
ALBERT WOOD

    Acknowledged, subscribed and sworn to before me this 27th day of December, 1989.

_____
NOTARY PUBLIC

My commission expires:
    12-19-92

74

FILED

█F'ORDED IN _____
░░░ NO _____ _PAGE _____

FEB 12 1990

IN THE DISTRICT COURT OF DELAWARE COUNTY, OKLAHOMA

JUDY LARMON

GRAND FEDERAL SAVINGS BANK,

                    Plaintiff,                )
                                               )
Vs.                                            )          Case No. C-88-224
                                               )
VICTOR KLINGENBERG, et al.,                    )
                                               )
                    Defendants.                )

ALIAS
VALUATION AND APPRAISAL OF PROPERTY

        We, John R. Robinson, Albert Wood, and Gerrie Ritchie, disinterested householders residing in Delaware County, State of Oklahoma, having been by Jim Earp, Sheriff of said County of Delaware, duly summoned to appraise the property levied on in this case, after being first sworn, do return that upon actual view of said premises and after having been on said premises, we find and estimate the same to be of total value as set forth to-wit:

        Lot 10, The Lee Estates Subdivision, according to the recorded plat thereof, Delaware County, Oklahoma,

        $ 109,000. .

DATED:
FEES: 75⁰⁰   Each Appraiser
TOTAL: 275⁰⁰

STATE OF OKLAHOMA
                              ..ss
COUNTY OF DELAWARE

        I do certify that the above named appraisers are disinterested householders, residents of Delaware County in said State and were by me duly summoned and sworn impartially to appraise the above described real property upon actual view thereof this ___ day of _____ , 19__

                                            SHERIFF